# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 18-60421

————

United States Court of Appeals
Fifth Circuit

**FILED**

April 3, 2020

Lyle W. Cayce
Clerk

ROSA MARISOL AVELAR-OLIVA, also known as Rosa Ayelar-Oliva,

Petitioner

v.

WILLIAM P. BARR, U. S. ATTORNEY GENERAL,

Respondent

————

Petition for Review of an Order of the
Board of Immigration Appeals

————

Before JOLLY, JONES, and ENGELHARDT, Circuit Judges.

KURT D. ENGELHARDT, Circuit Judge:

Rosa Marisol Avelar-Oliva, a native and citizen of El Salvador, petitions for review of a final order issued by the Board of Immigration Appeals (BIA). The BIA dismissed her appeal from the order of the Immigration Judge (IJ) denying her claims for asylum, withholding of removal, and Convention Against Torture (CAT) relief. For the following reasons, we DENY the petition for review.

## I.

Avelar-Oliva's requests for immigration relief arise from threats she claims to have received, between January 6, 2016 and February 14, 2017, from Rosalio Oliva ("Rosalio"), who she identifies as a police officer and her mother's cousin. Although Avelar-Oliva had not seen Rosalio for several years prior to January 2016, she testified that he had abused her when she was a child.

No. 18-60421

Specifically, Avelar-Oliva testified that, in August 2002, when she was 11 years old, she went to live with Rosalio, his wife, and son because he had promised her mother that he would send her to school and provide for her. Instead, she contends, Rosalio imprisoned her in his house for two years, forcing her to work 16–18 hours a day, depriving her of food, and raping her numerous times. Avelar-Oliva asserts the abuse ended only when she escaped Rosalio's home, in November 2004, to live with her brother. Avelar-Oliva maintains that she never told her brother or mother about Rosalio's abuse because she "was ashamed[,] very embarrassed[,] and did not want to cause further problems."

Two years later, in 2006, Avelar-Oliva, then 15 years old, met and began living with her husband, Jose Miguel Reyna Gutierrez, in La Palma, El Salvador. In 2014, however, less than a year after the birth of their second child, Avelar-Oliva moved to Tejutla, El Salvador, to be closer to her mother. It was there, she contends, in January 2016, that she encountered Rosalio, who wore a police uniform and gun, demanded that she have a sexual relationship with him, and attempted to rape her. She maintains that Rosalio also told her that the police would not help her because he was a police officer. And, thereafter, on three occasions in September 2016, Avelar-Oliva alleges, Rosalio grabbed her by her neck and jaw, asked for sex, and demanded that she be with him and collect rent money for him in the area. During the latter two encounters, Avelar-Oliva contends, Rosalio threatened to hurt her and her family.

Telling her mother only that a police officer had threatened to kill them, Avelar-Oliva, her mother, and her children moved to Caserio San Francisco, El Salvador, in mid-September 2016, in hopes of escape. Her relief was short-lived, she claims, because Rosalio again found her, on February 14, 2017, while she was walking home, and threatened to kill her and her family if she did not

2

No. 18-60421

do as he wanted. Upon that encounter, Avelar-Oliva told her mother, siblings, and Gutierrez of Rosalio's threats, told Gutierrez that he must hide with their children, and said that she must leave the country to be safe from Rosalio. Thereafter, Gutierrez took their children with him, Avelar-Oliva's mother and siblings moved, and she left El Salvador.

## II.

After traveling through Guatemala and Mexico, Avelar-Oliva entered the United States without a valid entry document on May 1, 2017. Shortly thereafter, she was detained by the United States Department of Homeland Security (DHS), which initiated removal proceedings against her. Conceding her inadmissibility, Avelar-Oliva filed an application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). In May 2017, an asylum officer, with the assistance of a Spanish speaking interpreter, conducted a telephonic credible fear interview (CFI) of Avelar-Oliva.[1]

The asylum officer's record from Avelar-Oliva's CFI indicates that, at the conclusion of the interview, Avelar-Oliva confirmed that the asylum officer's summary of her claim was accurate and said that there was nothing she would like to add. The asylum officer asked if there was anything else that she would like to say about her claim that had not yet been discussed; she responded negatively. Finally, the asylum officer asked if Avelar-Oliva understood all the questions; she responded, "Yes." The asylum officer asked if she had any problems understanding the interpreter; she responded, "No." The asylum officer concluded that Avelar-Oliva had a credible fear of persecution.

---

[1] Asylum officers administer credible fear interviews when an alien, subject to expedited removal, expresses a fear of persecution. 8 U.S.C. § 1225(b)(1)(A)–(B). If an alien is determined to have a credible fear of persecution, she can remain in the United States while her claims for relief are considered. 8 U.S.C. § 1225(b)(1)(B)(ii).

3

No. 18-60421

Following a merits hearing at which Avelar-Oliva and two experts testified, the IJ issued a written decision, finding Avelar-Oliva not credible, "[a]fter considering the totality of the circumstances, especially given the lack of corroborating evidence and [] multiple inconsistencies," and denied her requests for relief. The IJ's decision additionally characterizes certain testimony by Avelar-Oliva as implausible, particularly regarding her allegations that she suffered two years of physical and sexual abuse from Rosalio without exhibiting visible signs of injury, or evident emotional distress, such that no one was ever aware of her suffering. The information considered by the IJ was taken from the notes of the CFI, the affidavit that Avelar-Oliva had submitted with her applications for relief, Avelar-Oliva's testimony at the merits hearing, and an affidavit provided by Gutierrez. The IJ's adverse credibility determination prevented Avelar-Oliva from satisfying her burden of establishing eligibility for asylum, withholding of removal, and protection under the CAT.

III.

On appeal, the BIA affirmed, relying on the multiple inconsistencies identified by the IJ, and finding no "clear error" in the IJ's "adverse credibility" determination. The BIA likewise found the CFI sufficiently reliable, with questions that were not "too vague." Finding no clear error based on the identified inconsistencies, the BIA eschewed any need to rely on the "multiple implausibilities" also found by the IJ, which amici curiae argued, on appeal, reflected a misunderstanding of gender-based violence and sexual abuse. Instead, the BIA relied only on the following: (1) Avelar-Oliva testified that she was never bruised when she was attacked by Rosalio, but told the asylum officer during her CFI that she sustained bruises on two occasions; (2) Avelar-Oliva testified that she was never harmed in front of her family members, but told the asylum officer during her CFI that Rosalio had grabbed and

4

threatened her in front of her mother and children; (3) Avelar-Oliva testified that Rosalio sexually abused her as a child, but had not mentioned this abuse during her CFI; and (4) Avelar-Oliva testified that she did not tell Gutierrez that Rosalio was harassing her until 2017, whereas Gutierrez's affidavit stated that Avelar-Oliva had told him about the abuse in 2016.

The BIA further concluded that there was insufficient support for Avelar-Oliva's contentions that these inconsistencies resulted from a misinterpretation of her testimony during her CFI, a failure of the asylum officer to ask a specific question regarding past abuse, and an inference by Gutierrez, in 2016, from his general knowledge of threats being made by an unidentified police officer. The BIA also agreed with the IJ's determination that Avelar-Oliva "did not submit sufficient corroborating evidence to rehabilitate her incredible testimony," noting that Avelar-Oliva's expert witnesses' testimony were general in nature and that Avelar-Oliva had not submitted a corroborating statement from her mother or brother.

The BIA additionally concluded that the IJ did not clearly err, relative to Avelar-Oliva's claim under the CAT, in finding Avelar-Oliva had not demonstrated a likelihood of being tortured upon her return to El Salvador. Lastly, to the extent that Avelar-Oliva and amici curiae sought to submit new evidence on appeal, the BIA reasoned that it was precluded from engaging in factfinding when deciding appeals. It likewise concluded remand was not warranted because Avelar-Oliva and amici curiae had not established that proposed new evidence would alter the outcome of the case. Following the issuance of the BIA's May 7, 2018 opinion, Avelar-Oliva filed her petition with this court.

IV.

No. 18-60421

We review an immigration court's factual findings for substantial evidence and conclusions of law de novo. *Orellana-Monson v. Holder,* 685 F.3d 511, 517–18 (5th Cir. 2012). To the extent that the BIA relied upon the IJ's rulings, we may consider the decisions of both the BIA and the IJ. *Theodros v. Gonzales*, 490 F.3d 396, 400 (5th Cir. 2007). On substantial-evidence review, factual findings are not reversed unless the petitioner demonstrates "that the evidence is so compelling that no reasonable factfinder could reach a contrary conclusion." *Orellana-Monson,* 685 F.3d at 518 (internal quotation marks and citation omitted).

Credibility determinations are factual findings that are reviewed for substantial evidence. *See Vidal v. Gonzales*, 491 F.3d 250, 254 (5th Cir. 2007). The trier of fact, considering the totality of the circumstances and all relevant factors, may base a credibility determination on

> the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record . . , and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor. There is no presumption of credibility, however, if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal.

8 U.S.C. § 1158(b)(1)(B)(iii).

The IJ and BIA "may rely on *any* inconsistency or omission in making an adverse credibility determination as long as the totality of the circumstances establishes that an asylum applicant is not credible." *Wang v. Holder*, 569 F.3d 531, 538 (5th Cir. 2009) (internal quotation marks and citation omitted).

Nevertheless, an adverse credibility determination "must be supported by specific and cogent reasons derived from the record." *Id.* at 537 (internal quotation marks and citation omitted).

Regardless of whether an alien's testimony is otherwise credible, the IJ may require the submission of reasonably available evidence corroborating a claim for relief from removal. 8 U.S.C. § 1158(b)(1)(B)(ii); 8 U.S.C. § 1231(b)(3)(C); 8 C.F.R. § 208.16(b). Regarding the requirement of corroborating evidence, § 1158(b)(1)(B)(ii) provides:

> The testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee. In determining whether the applicant has met the applicant's burden, the trier of fact may weigh the credible testimony along with other evidence of record. Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence.

*Id.* The failure to present such evidence can be fatal to an alien's application for relief. *Yang v. Holder*, 664 F.3d 580, 585-87 (5th Cir. 2011).

### *Issue 1: Reliability of Avelar-Oliva's Credible Fear Interview (CFI)*

Contending that her CFI is unreliable under the factors set forth in *Ramsameachire v. Ashcroft*, 357 F.3d 169, 180 (2d Cir. 2004), Avelar-Oliva argues the BIA and IJ erred by failing to specifically evaluate the reliability of her CFI under those factors before considering it in rendering an adverse credibility determination. In *Ramsameachire*, the Second Circuit stated: "reviewing courts must closely examine [an] airport interview before concluding that it represents a sufficiently accurate record of the alien's statements to merit consideration in determining whether the alien is credible." 357 F.3d at 179. The Second Circuit then set forth four factors that

reviewing courts should use to evaluate the reliability of the airport interview: (1) whether the record of the interview merely summarizes the alien's statements or is a verbatim account; (2) whether the questions elicit the details of the asylum claim; (3) whether the alien appeared reluctant to reveal information to immigration officials because of prior interrogation sessions or other coercive experiences in his or her home country; and (4) whether the alien's answers to the questions suggest that the alien did not understand the translations provided by the interpreter. *Ramsameachire*, 357 F.3d at 180. Decisions issued by other circuits, such as *Ramsameachire*, however, are not binding on this court. *See United States v. Penaloza-Carlon*, 842 F.3d 863, 864 & n.1 (5th Cir. 2016). And, while this court has cited the factors set out in *Ramsameachire*, we have not expressly adopted a rule requiring consideration of specific factors in assessing the reliability of a CFI. *See Singh v. Sessions*, 880 F.3d 220, 226 (5th Cir. 2018).

Here, both the BIA and the IJ considered the reliability of the CFI and explained why they gave weight to Avelar-Oliva's statements. The IJ noted the asylum officer asked follow-up questions, there was no indication in the interview notes that there was confusion with the interpreter or that the interview was cut short, and every question was seemingly answered in its entirety. On the record before it, the BIA concluded the CFI was sufficiently reliable and that the questions asked at the interview were not too vague.

In any event, consideration of the factors set forth in *Ramsameachire*, and cited by Avelar-Oliva, would not have compelled a determination that her CFI was unreliable. Avelar-Oliva was interviewed in Spanish and nothing in the record or in the detailed log of that interview indicates that she was unable to understand the questions, that the asylum officer failed to adequately elicit details of her claim, or that she was reluctant to reveal information. *Ramsameachire*, 357 F.3d at 180. To the contrary, the asylum officer asked

numerous follow-up questions about why Rosalio threatened her and gave her opportunities to provide any additional information and to ask questions. S*ee Singh*, 880 F.3d at 226.

Finally, this court has held that discrepancies among an alien's CFI, other records, and testimony can be considered in deciding credibility. *Singh*, 880 F.3d at 226; *see also Fishaye v. Holder*, 559 F. App'x 296, 298 (5th Cir. 2014) (affirming determination due to variances between credible fear interview and testimony).[2] Thus, the BIA and the IJ did not err in considering Avelar-Oliva's CFI when determining her lack of credibility.

## *Issue 2: The BIA's Standard of Review*

As an initial matter, in upholding the IJ's adverse credibility determination, the BIA expressly denied reliance on the IJ's findings that questioned the plausibility of Avelar-Oliva's testimony that no one was aware she suffered harm from her encounters with Rosalio from 2016 to 2017, that she did not know whether Rosalio was a police officer when had she lived with him for two years, that she had not expressed any emotional or physical signs of harm or distress during the two years she lived with Rosalio, and, consequently, no one was aware of the suffering she endured. From this, Avelar-Oliva argues the BIA legally erred in upholding the IJ's adverse credibility determination by applying "the wrong standard of review." Specifically, she contends that the BIA erred in applying the clearly erroneous standard of review because it expressly declined to rely on the IJ's findings questioning the plausibility of Avelar-Oliva's testimony concerning the physical abuse she sustained. She maintains that the BIA cannot "pick and choose" the findings to rely on from the IJ's opinion—such that it relies only on

---

[2] Although unpublished decisions are not precedent, these decisions may be considered persuasive authority. *See* 5TH CIR. R. 47.5.4; *Ballard v. Burton*, 444 F.3d 391, 401 & n.7 (5th Cir. 2006).

a "subset" of the IJ's findings that are the bases for an adverse credibility determination—while applying the clear error standard of review.  She further contends that there is no reason to believe that the IJ would have concluded that she was not credible based on only the findings considered by the BIA.

We first note that Avelar-Oliva did not first present this argument to the BIA by means of a motion for reconsideration (or other post-decision motion).  Judicial review of a final removal order is available only where the alien has exhausted all administrative remedies of right. *Roy v. Ashcroft*, 389 F.3d 132, 137 (5th Cir. 2004); 8 U.S.C. § 1252(d)(1).  Because the exhaustion requirement is statutorily mandated, an alien's failure to exhaust an issue before the BIA is a jurisdictional bar to this court's consideration of the issue. *Wang v. Ashcroft*, 260 F.3d 448, 452 (5th Cir. 2001).

This exhaustion requirement applies to all issues for which an administrative remedy is available to a petitioner as of right." *Omari v. Holder*, 562 F.3d 314, 318 (5th Cir. 2009) (internal quotation marks and citation omitted).  "A remedy is available as of right if (1) the petitioner could have argued the claim before the BIA, and (2) the BIA has adequate mechanisms to address and remedy such a claim." *Id.* at 318–19.  Thus, if the allegation of BIA error presents "a wholly new ground for relief arising only as a consequence of some error in the deportation proceedings" that the BIA "never had a chance to consider," rather than simply disagreement with the BIA's resolution of a previously urged issue, the error must be raised in the first instance before the BIA, either in a motion to reopen or a motion for reconsideration. *Dale v. Holder*, 610 F.3d 294, 298–99 (5th Cir. 2010).  Otherwise, this court is deprived of jurisdiction to consider whether the BIA committed legal error.

Avelar-Oliva's contention that the BIA misapplied the standard of review should have been presented to the BIA in a motion for reconsideration.

The same is true if this issue is instead stated as an assertion that the BIA engaged in impermissible factfinding by substituting its own credibility judgment for that of the IJ when it declined to adopt all of the IJ's findings in support of the adverse credibility determination. Either way, the issue was not exhausted through a motion to reconsider filed with the BIA, and Avelar-Oliva's failure to file such a motion deprives this court of jurisdiction to review the issue. *See Omari*, 562 F.3d at 318–21. The legal nature of Avelar-Oliva's arguments does not excuse her from exhausting administrative remedies, and there is no indication that the claim involves procedural errors that were not correctable by the BIA. Therefore, this court lacks jurisdiction to review Avelar-Oliva's challenge to the standard of review applied by the BIA in upholding the IJ's adverse credibility determination. *See Omari*, 562 F.3d at 320–21.

Furthermore, to the extent that Avelar-Oliva asserts that the BIA must rely on all of the IJ's findings in support of an adverse credibility determination, she points to no authority to support this proposition. To the contrary, this court has indicated that the BIA may decline to consider a basis for the IJ's credibility determination as long as the bases identified and relied on by the BIA satisfy the substantial evidence threshold for upholding an adverse credibility determination. *See, e.g., Sun v. Barr*, 754 F. App'x 294, 295 (5th Cir. 2019). Further, this court has upheld an adverse credibility determination, even where it doubted the propriety of some of the credibility findings, on the basis that there was no reasonable possibility the IJ or BIA would have reached a different outcome absent those findings. *See Wang v. Sessions*, 736 F. App'x 477, 482 (5th Cir. 2018). Given the record before us, as discussed below, we are satisfied that the outcome would not differ had the IJ not considered the items characterized as implausibilities in the IJ opinion. Thus, Avelar-Oliva's claim is without merit.

### *Issue 3: Adverse Credibility*

Avelar-Oliva additionally challenges the evidentiary sufficiency of the BIA's adverse credibility determination, arguing that it is not supported by substantial evidence. She also asserts error with respect to the BIA's determination that she failed "to submit sufficient corroborating evidence to rehabilitate her incredible testimony." Specifically, she contends the agency failed to adhere to established BIA precedent, *Matter of L-A-C-*, 26 I & N Dec. 516, 518 (BIA 2015), 2015 WL 4386337, by not providing sufficient analysis of whether she had adequately explained why she could not reasonably obtain such evidence and depriving her of the opportunity to request a continuance to allow her to seek corroboration. Avelar-Oliva additionally asserts that the BIA's interpretation, in *Matter of L-A-C-,* of the REAL ID Act's corroboration provision, 8 U.S.C. § 1158(b)(1)(B)(ii), is too narrow and should not be given deference. Citing *Ren v. Holder*, 648 F.3d 1079, 1090–91 (9th Cir. 2011) and *Chukwu v. Att'y Gen.*, 484 F.3d 185, 192 (3d Cir. 2007), she asks that we instead follow the Third and Ninth Circuits in requiring immigration courts to provide advance notice of the need for specific corroborating evidence and an automatic continuance to allow an opportunity to obtain it.

#### *Evidentiary Inconsistencies and Omissions*

"[I]t is the factfinder's duty to make determinations based on the credibility of the witnesses." *Singh*, 880 F.3d at 225 (internal quotation marks and citation omitted). An adverse credibility determination must be supported by "specific and cogent reasons derived from the record." *Id.* (internal quotation marks and citation omitted). The factfinder may rely on any inconsistency or omission to determine that the petitioner is not credible in light of the totality of the circumstances, regardless of whether the inconsistency or omission goes to the heart of the applicant's claim. *Ghotra v. Whitaker*, 912 F.3d 284, 289 (5th Cir. 2019); *see also* 8 U.S.C. § 1158(b)(1)(B)(iii) (listing factors the trier of

fact may consider in making its credibility determination, such as the inconsistency between an applicant's written and oral statement). This court defers to "an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Singh*, 880 F.3d at 225 (internal quotation marks and citation omitted).

Avelar-Oliva has failed to show that the evidence compels a conclusion contrary to that of the BIA and IJ on the issue of her credibility. *See Wang*, 569 F.3d at 537. The BIA and IJ relied on specific inconsistencies among Avelar-Oliva's CFI and her testimony: (1) Avelar-Oliva told the asylum officer during her CFI that she had sustained bruises on her neck on the two occasions that Rosalio choked her, but testified that she had sustained red marks, not bruises, when Rosalio grabbed her around the neck; and (2) Avelar-Oliva told the asylum officer that, on one occasion, Rosalio had grabbed and threatened her in front of her mother and children, but testified that no encounter between her and Rosalio had occurred in front of her mother and children. Avelar-Oliva maintains that these inconsistencies do not warrant an adverse credibility finding because they are only trivial discrepancies.

However, her focus on the importance of the inconsistencies is misguided. An adverse credibility assessment may be based on any inconsistency even if it does not "go to the heart of the applicant's claim or any other relevant factor." 8 U.S.C. § 1158(b)(1)(B)(iii); *see Wang*, 569 F.3d at 538. The discrepancies concerning whether she had sustained bruises during two encounters with Rosalio and whether an encounter with Rosalio had occurred in front of family members—which suggest that her recollection of events may be unreliable—are sufficient grounds for the finding. *See Ghotra*, 912 F.3d at 289; *see also Njoku v. Holder*, 540 F. App'x 280, 281 (5th Cir. 2013) (holding that finding was merited where, inter alia, applicant could not remember

accurately the date on which he married his wife).  Avelar-Oliva also maintains that these inconsistencies resulted from confusion and miscommunication during her CFI.   However, she offers no evidence to support this claim; rather, the CFI record fails to reflect confusion or a problem with communication.  Avelar-Oliva's unsupported explanations do not compel a conclusion that no reasonable factfinder could have found her to be incredible.  *See Wang*, 569 F.3d at 538; *see also Qhao v. Lynch*, 608 F. App'x 282, 283 (5th Cir. 2015) (holding that record did not compel different conclusion as to alien's credibility even though alien offered explanations for inconsistencies).

The BIA and IJ also relied on the fact that, in her CFI, Avelar-Oliva had failed to mention that she had lived with Rosalio from the age of 11 to 13 and, during that time, he had sexually abused her.  Avelar-Oliva maintains that she did not mention these facts during her CFI because the asylum officer failed to ask questions that would have elicited this information, such as whether she had suffered past abuse at the hands of Rosalio.  She also asserts that the BIA's reliance on this omission renders unsuccessful its attempt to distance itself from the implausibilities identified by the IJ that the amici curiae argue reflect a misunderstanding of the effects of gender-based violence and sexual abuse.  She contends that this "omission was actually entirely unremarkable, and should have been expected" because a victim of childhood sexual assault is unlikely to spontaneously reveal the details of her abuse.  This court, however, has upheld adverse credibility determinations based on an alien's failure to mention extremely traumatic experiences during a CFI.  *See, e.g., Roach v. Lynch*, 632 F. App'x 192, 197 (5th Cir. 2015); *Xinyue Wu v. Holder*, 453 F. App'x 467, 468-69 (5th Cir. 2011); *Martinez-Alvarado v. Holder*, 405 F. App'x 920, 921 (5th Cir. 2010).

The last inconsistency relied on by the BIA and IJ was that Avelar-Oliva testified that she had not told Gutierrez that Rosalio was harassing her until

2017, but in his affidavit, Gutierrez stated that Avelar-Oliva had told him about the harassment in 2016. Avelar-Oliva maintains that these differences do not amount to inconsistencies for purposes of an adverse credibility determination. She contends that, in 2016, she told Gutierrez that she was being harassed by a police officer and that Gutierrez inferred that the police officer was Rosalio. Avelar-Oliva's construction of the evidence is not compelled by the record; the conclusion of the BIA and IJ that these discrepancies constituted contradictions that affected Avelar-Oliva's credibility is entitled to deference and, as indicated, is supported by the record. *See Wang*, 569 F.3d at 538.

### *Available Corroborating Evidence*

Avelar-Oliva also asserts error with respect to the BIA's determination that she failed "to submit sufficient corroborating evidence to rehabilitate her incredible testimony." She maintains that she provided all evidence available to her and that corroborating statements from her mother or siblings should not have been required because she was not in "reliable communication with them." She adds that any statement from her mother or siblings would not corroborate the sexual abuse she suffered while living with Rosalio because she had never disclosed it to her family.

Avelar-Oliva's arguments regarding the BIA's corroboration determination are unavailing. Although Avelar-Oliva maintains that she has extremely limited contact with her mother and siblings, she does not contend that she has no contact with them. Further, Gutierrez's affidavit stated that he and Avelar-Oliva's brother were receiving death threats, indicating that he is in contact with at least Avelar-Oliva's brother. Given that connection, Gutierrez presumably could have assisted her with contacting her family members in order to obtain statements from them. Additionally, while Avelar-Oliva's mother and siblings may not have been able to attest to the sexual

abuse she had suffered, they could have confirmed that she had resided with Rosalio, starting at the age of 11, that the family had had to move because she was being harassed by a police officer, that Rosalio was known to be a police officer, and that she had left El Salvador because of Rosalio's harassment. Thus, Avelar-Oliva has not shown that the record *compels* the conclusion that corroborating evidence—specifically a statement from her mother and siblings—was unavailable. *See Zhao v. Gonzales*, 404 F.3d 295, 306 (5th Cir. 2005); 8 U.S.C. § 1252 (b)(4) ("No court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence, as described in section 1158(b)(1)(B) . . .  of this title, unless the court finds, pursuant to subsection (b)(4)(B), that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable.").

### *Corroborating Evidence Procedures*

Avelar-Oliva also argues the agency failed to adhere to established BIA precedent, citing *Matter of L-A-C-*, by not sufficiently analyzing whether she had adequately explained why she could not reasonably obtain additional corroborative evidence. As a result, she maintains, she was deprived an opportunity to request a continuance to allow her to seek the necessary corroboration.  Moreover, she asks this court to follow the lead of the Third and Ninth Circuits in additionally requiring that the IJ, *prior* to rendering an adverse ruling on an alien's claim, provide (1) advance notice of the need for specific corroborating evidence and (2) an opportunity to seek that evidence or explain its absence.

In *Matter of L-A-C-*, the BIA interpreted section 101(a)(3) of the REAL ID Act of 2005 (enacting section 208(b)(1)(B)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1158(b)(1)(b)(ii)) as codifying the standards previously outlined in *Matter of S-M-J-*, 21 I & N Dec. 722 (BIA 1997), 1997 WL 80984, for determining when corroborating evidence may be required.

16

*Matter of L-A-C-*, 26 I & N Dec. at 519, 2015 WL 4386337 at *3–4.  The BIA concluded that the REAL ID Act made it clear that the applicant seeking asylum or withholding of removal bears the burden of demonstrating eligibility for relief, "which may require the submission of corroborative evidence."  *Id.* at 519, 2015 WL 4386337 at *4.  Likewise, the BIA explained, the instructions for the Application for Asylum and Withholding of Removal (Form I-589) provide additional notice to applicants that "'reasonably available corroborative evidence' relating to both general country conditions and the specific facts upon which the claim is based," must be submitted, and warn the applicant that an explanation must be given "if such evidence is not reasonably available" or is not being provided. *Id.* at 520, 2015 WL 4386337 at *4. Additionally, concluding the statute was ambiguous relative to "what steps must be taken" when the IJ determines that the applicant should have submitted specific evidence to corroborate credible testimony, but has not, the BIA explained that the IJ should: (1) give the applicant "an opportunity to explain why he could not reasonably obtain such evidence," (2) "ensure that the applicant's explanation is included in the record," (3) "clearly state for the record whether the [applicant's] explanation is sufficient," and (4) if a continuance is requested, "decide whether to grant a continuance for the applicant to obtain additional corroboration."  *Id.* at 518–22, 2015 WL 4386337 at *3-5.

Importantly, however, the BIA concluded that § 1158(b)(1)(B)(ii) "does *not* require an Immigration Judge to give an applicant additional *advance* notice of the *specific* corroborating evidence necessary to meet the applicant's burden of proof and to provide an *automatic* continuance for the applicant to obtain such evidence." *Id.* at 524, 2015 WL 4386337 at *6 (emphasis added). Rather, "[c]onsistent with established procedure, it is within the discretion of the Immigration Judge to decide whether there is good cause to continue the proceedings in a particular case for additional corroboration or for any other

reason." *Id.* In so concluding, the BIA reasoned that nothing in the legislative history suggests Congress intended to create additional "rigid requirements" for consideration of corroboration. *Id.* at 520, 524, 2015 WL 4386337 at *4, 6. Instead, the purpose was to allow "Immigration Judges to follow commonsense standards in assessing asylum claims without undue restriction." *Id.* at 520, 2015 WL 4386337 at *4. Thus, the BIA concluded, "an alien bears the ultimate burden of introducing such evidence without prompting from the Immigration Judge." *Id.* at 523, 2015 WL 4386337 at *6.

An agency's interpretations of the statutes and regulations it administers should be given deference. *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 844 (1984); Efe *v. Ashcroft,* 293 F.3d 899, 903–04 (5th Cir. 2002). If the statute is "silent or ambiguous with respect to the specific issue," the court should ask "whether the agency's answer is based on a permissible construction of the statute." *INS v. Aguirre–Aguirre,* 526 U.S. 415, 424 (1999) (quoting *Chevron,* 467 U.S. at 843). It is the BIA's rejection of the advance notice and automatic continuance requirements where Avelar-Oliva asks that we part ways with the BIA's interpretation, in *Matter of L-A-C-,* of § 1158(b)(1)(B)(ii)'s corroboration provision, and instead follow the lead of the Third Circuit, in *Chukwu,* and the Ninth Circuit in *Ren.* Notably, as Avelar-Oliva concedes, the Second, Sixth, and Seventh Circuits have taken the opposite view. *See, e.g., Wei v. Sessions*, 883 F.3d 23, 30–31 (2d Cir. 2018) (deferring to the agency's interpretation in *Matter of L-A-C-*); *Liu v. Holder,* 575 F.3d 193, 198 (2d Cir. 2009) ("alien bears ultimate burden of introducing such evidence without prompting from IJ" prior to disposition of claim); *Gaye v. Lynch*, 788 F.3d 519, 523 (6th Cir. 2015) (applicant is not entitled to advance notice); *Rapheal v. Mukasey,* 533 F.3d 521, 530 (7th Cir. 2008) (IJ need not provide notice or an opportunity to provide additional evidence prior to rendering an adverse ruling; law clearly notifies aliens of the importance of

corroborative evidence). And, earlier this month, the Eighth Circuit joined ranks with those three circuits on this issue. *See Uzodinma v. Barr*, No. 18-3437, 951 F.3d 960, 966 (8th Cir. 2020) (asylum application form and related statutes provide sufficient notice of corroboration requirement and consequences such that, at the merits hearing, IJ need not specify corroborative evidence that would be persuasive nor grant an automatic continuance for that evidence to be obtained).

This court has not yet addressed this question in a *published* opinion. In unpublished opinions, however, we have suggested agreement with the approach taken by the Second, Sixth, Seventh, and Eighth Circuits. *See Marroquin-Almengon v. Barr,* 778 F. App'x 330, 331–32 (5th Cir. 2019): *Liu v. Lynch*, 644 F. App'x 301, 303 (5th Cir. 2016). In both decisions, the panels found no error in the IJ's failure to provide *advance* notice to the applicant of the need for corroborating evidence, reasoning, *in part*, that § 1158(b)(1)(B)(ii) "clearly contemplates that corroborating evidence might be required," such that the applicants had sufficient "notice of the consequences of failing to adduce corroborating evidence." *Marroquin-Almengon,* 778 F. App'x at 332 (quoting *Liu*, 644 F. App'x at 303). Although unpublished and thus not binding, these decisions are persuasive. *See* 5th Cir. R. 47.5.4; *Ballard v. Burton*, 444 F.3d 391, 401 & n.7 (5th Cir. 2006). Accordingly, we join the Second, Sixth, Seventh, and Eighth Circuits in rejecting the notion that an IJ, prior to disposing of an alien's claim, must provide additional *advance* notice of the specific corroborating evidence necessary to meet the applicant's burden of proof and an *automatic* continuance for the applicant to obtain such evidence.

In any event, however, as the Government emphasizes, the Ninth Circuit imposes these additional procedural requirements only where corroboration of otherwise *credible* testimony is necessary. Thus, where, as

here, the IJ has made an *adverse* credibility determination, neither the procedures outlined in *Matter of L-A-C-* nor *Ren's* advance notice and continuance requirements (for submission of additional, corroborative evidence) were ever triggered. *See Wang v. Sessions*, 861 F.3d 1003, 1009 (9th Cir. 2017) (Wang "stumble[d] at first step in *Ren's* "sequential analysis" such that IJ did not request corroborative evidence and had no obligation to give Wang an additional opportunity to bolster case with additional evidence).[3]

And, finally, as in *Liu* and *Marroquin-Almengon,* the BIA's adverse credibility determination was not based solely on the applicant's failure to produce corroborating evidence. It was also based on the inconsistencies and omissions noted by the IJ, who had the opportunity to assess Avelar-Oliva's demeanor and the overall tenor of her testimony. Thus, considering the totality of the circumstances, we hold no factfinder was compelled to conclude that

---

[3] *Wang* summarizes *Ren*'s "sequential analysis framework" as follows:

> Under this framework, the IJ must first determine whether the petitioner's testimony alone, without corroboration, is sufficient to sustain the petitioner's burden of proving eligibility for relief. *Ren*, 648 F.3d 1093. An applicant sustains the burden of proof "only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." 8 U.S.C. §1158(b)(1)(B)(ii).

> If the testimony is not sufficient by itself, then the IJ may require corroborative evidence. *Ren*, 648 F.3d at 1093. "Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1158(b)(1)(B)(ii).

> If the IJ determines that corroborative evidence is necessary, "the IJ must give the applicant notice of the corroboration that is required and an opportunity either to produce the requisite corroborative evidence or to explain why that evidence is not reasonably available." *Ren*, 648 F.3d at 1093.

*Wang,* 861 F.3d at 1008–09.

No. 18-60421

Avelar-Oliva was credible. Without credible evidence, there was no basis upon which to grant her applications for relief from removal. *See Zhang v. Gonzales*, 432 F.3d 339, 345 (5th Cir. 2005).

V.

An adverse credibility determination prevents Avelar-Oliva from satisfying her burden of establishing eligibility for asylum, withholding of removal, and protection under the CAT. For the reasons stated, nothing on the record before us, considering the totality of the circumstances, compels a contrary assessment of Avelar-Oliva's credibility. Accordingly, the petition for review is DENIED.