# United States Court of Appeals for the Fifth Circuit

No. 24-60445

United States Court of Appeals
Fifth Circuit

**FILED**

November 6, 2025

Lyle W. Cayce
Clerk

Marilu Calderon-Uresti,

*Petitioner*,

*versus*

Pamela Bondi, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A099 362 348

Before Higginbotham, Ho, and Douglas, *Circuit Judges*.
Patrick E. Higginbotham, *Circuit Judge*:

Marilu Calderon-Uresti challenges a final order of removal by the Board of Immigration Appeals (BIA). Calderon-Uresti sought "special rule cancellation" of her deportation under the Violence Against Women Act (VAWA), which permits discretionary immigration relief for an "alien [who] has been battered or subjected to extreme cruelty by a spouse or parent who is or was a United States citizen." She also applied for "regular rule cancellation," another discretionary scheme.

No. 24-60445

Calderon-Uresti testified to an immigration judge (IJ) that her husband physically and emotionally abused her, but she presented nothing else to corroborate her story. The IJ found her ineligible for special rule cancellation. Although she testified credibly, the IJ held Calderon-Uresti did not establish battery or extreme cruelty because she did not offer reasonably available supporting evidence. The IJ also found Calderon-Uresti ineligible for regular rule cancellation because she did not meet the statutory ten-year residency requirement. The IJ ordered Calderon-Uresti to leave the country and granted her voluntary departure. She sought review from the BIA, which dismissed her appeal.

We now consider whether the BIA erroneously applied the statutory special rule cancellation standard to these facts. We have jurisdiction to review the BIA's decision, and finding it to be supported by substantial evidence, DENY Calderon-Uresti's petition. Calderon-Uresti also makes regular rule cancellation arguments, but as she did not administratively exhaust, we lack jurisdiction to consider them.

## I.

Marilu Calderon-Uresti first came to the United States in 2010 at age fifteen, fleeing after mafia members kidnapped her in her native Mexico. Immigration authorities twice caught her and let her return to Mexico voluntarily. In 2011, she entered the United States unlawfully again and stayed. She testified that she sought permanent residency through Special Immigrant Juvenile Status, but her application was denied in 2016 because "by the time that [she] had [her] last hearing, [she] was already an adult."

Calderon-Uresti was later arrested for a misdemeanor DWI on May 25, 2018. Immigration and Customs Enforcement officers served her four days later with a notice to appear. She had been in the United States for just under seven years. The notice to appear did not specify a date or time for

Calderon-Uresti's removal hearing, stating only that the hearing was "[t]o be set." Shortly after immigration proceedings began, Calderon-Uresti married her husband Francisco Flores, Jr., a U.S. citizen with whom she had lived in Texas since 2011.

In a removal hearing on May 8, 2019, Calderon-Uresti conceded her deportability through counsel, but stated her intent to "preserve cancellation of removal under VAWA." She applied for VAWA special rule cancellation on July 3, 2019. This scheme, codified at 8 U.S.C. § 1229b(b)(2), offers discretionary immigration relief for "battered spouse[s] or child[ren]" of U.S. citizens or permanent residents.[1] Calderon-Uresti argued she was statutorily eligible because she had been "subjected to extreme cruelty by [her] spouse . . . who is or was a United States citizen."[2] In the same application, she also requested regular rule cancellation of removal under 8 U.S.C. § 1229b(b)(1).

On August 30, 2019, the immigration court held a hearing on her applications for discretionary relief. Calderon-Uresti testified that she met her husband, Francisco Flores, about seven years earlier; that their dynamic was "good" at the beginning, "fine like a family;" but after their two children were born in 2012 and 2015, the relationship deteriorated and the couple "would fight." Flores became physically and emotionally abusive by the end of 2018. Calderon-Uresti testified that he would insult her, "tell [her] that [she] was crazy," claim that she "was a slut" and "wanted to be looking at other men," and say she "was not worth anything." She suffered this treatment "almost every day." On one occasion, after she got out of the car during a fight with Flores and walked toward their house, Calderon-Uresti

---

[1] 8 U.S.C. § 1229b(b)(2).

[2] 8 U.S.C. § 1229b(b)(2)(A)(i)(I).

testified that he "sped up the car" and hit her. She had to be hospitalized. Another time, when Calderon-Uresti returned from work, Flores "wouldn't let [her] in and he said that [she] had to leave and that he was not going to give [her her] children."

One incident drove Calderon-Uresti to call the police. Flores "started beating [her] in front of" her small children "until [one of the children] said dad, stop." Flores "pushed [their] son and he fell." Calderon-Uresti said Flores "was trying to get me in my face but I would put my arms up so he would hit me in my arms." When police arrived, they photographed bruising on Calderon-Uresti and her son and generated a police report. Calderon-Uresti testified to other day-to-day mistreatment, like when Flores once threw a plate of food at her, and she said he "[c]onstantly" made unwanted sexual advances.

Calderon-Uresti's testimony was the only direct evidence of the abuse. She never confided in anyone about her situation, other than her lawyer, because she "fe[lt] ashamed." Although Calderon-Uresti made a police report on the day officers came to her home, she testified she "wasn't able to obtain it" in the several months she had before the immigration proceedings. She explained, "I don't drive and it's very difficult to tell my husband to take me to get a report that I filed against him." Her lawyer conceded in closing argument that "the fact that we do not have the police report or those photos hurts our case." But he argued that "we have to understand the absence of those documents within the situation that the respondent was living in . . . it's not far-fetched to understand how difficult it must have been for respondent to leave her [] place of residence, obtain transportation, and secure those documents in the timeframe given." Calderon-Uresti also did not obtain hospital records from the time her husband hit her with his car. The IJ remarked, "Don't you think those are

pretty important when you don't have anyone who can corroborate that you were abused?," and Calderon-Uresti said, "Honestly, yes, but I forgot."

The IJ ruled that Calderon-Uresti was ineligible for special rule cancellation under VAWA. The IJ found Calderon-Uresti's testimony on abuse to be "credible" but expressed "some concerns about [her] testimony." The IJ explained:

> [I]t is important to note that in this case, the Court does not have a police report despite the fact that respondent stated she reported an incidence of violence in March of 2018. The Court does not have hospital records from hospitalization that would have occurred in November or December of 2018. The Court does not have testimony from any witnesses or statement from any witnesses corroborating seeing bruises on respondent or even that respondent explained to them that she was being assaulted . . .
>
> All of these issues, that respondent had multiple opportunities and ample avenues to provide corroboration, are simply not provided to the Court, and thus, that lack of corroboration coupled with the somewhat suspect credibility of respondent's testimony, although not to the level of adverse credibility, causes the Court to find that respondent cannot meet her burden.

The IJ denied Calderon-Uresti's application for special rule cancellation on that ground. He also held in the alternative that even if Calderon-Uresti established battery or extreme cruelty, she could not meet another statutory eligibility requirement for VAWA special rule cancellation: "that she or her qualifying relatives would undergo an exceptional hardship as a result of her removal." The IJ granted Calderon-Uresti voluntary departure.

Calderon-Uresti appealed to the BIA. She argued that "her credible testimony satisfie[d] her burden of proof" on battery and extreme cruelty, and that "corroborating evidence in support of her claim was not reasonably

available to her." The BIA rejected that argument and upheld the IJ's decision. The BIA agreed that Calderon-Uresti "ha[d] not met her burden of proof as to the first requirement for special rule cancellation of removal;" having dismissed the appeal on that ground, the BIA did not reach her hardship contention.

This petition for review followed. After, Calderon-Uresti then filed a Motion to Reopen and Remand with the BIA, seeking to submit additional corroborating evidence. We stayed this case to await the BIA's decision. Later, although Calderon-Uresti's motion before the BIA was still pending, the government filed an unopposed motion to lift the stay. We granted that motion and now address the merits.

Turning first to special rule cancellation, we affirm the BIA's decision, finding that it is supported by substantial evidence. Then, as Calderon-Uresti did not administratively exhaust the claim for regular rule cancellation, we find we lack jurisdiction.

## II.

## A.

We start with Calderon-Uresti's application for special rule cancellation under VAWA. We must confirm our own jurisdiction, which Congress has limited for appeals from the BIA. Discretionary removal under § 1229b follows a two-step process. "First, the IJ must decide whether the noncitizen is eligible for cancellation under the relevant statutory criteria."[3] We have jurisdiction to review "constitutional claims or questions of law" that arise from this eligibility decision,[4] including mixed questions of law and

---

[3] *Wilkinson v. Garland*, 601 U.S. 209, 213 (2024).

[4] 8 U.S.C. § 1252(a)(2)(D).

No. 24-60445

fact involving the "application of a legal standard to undisputed or established facts."[5] Then, "[a]fter determining whether a noncitizen meets these criteria, an IJ proceeds to step two and decides whether to exercise discretion to cancel the order of removal in a particular case."[6] We lack jurisdiction to review this exercise of discretion at the second step.[7]

Put simply, we can review the BIA's application of the § 1229b eligibility criteria to the record. But if the BIA finds those statutory criteria to be met and then denies an application as a matter of discretion, we cannot review that discretionary denial. We "conclude that we have jurisdiction to review, as a mixed question of law and fact, the BIA's holding that the facts alleged by [Calderon-Uresti] failed to meet the standard for cancellation of removal on VAWA grounds under 8 U.S.C. § 1229b(b)(2)."[8] The core of this dispute is whether the record evidence meets the statutory eligibility criteria. That is exactly the type of mixed question courts can review in the special rule cancellation context.[9]

## B.

---

[5] *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 227 (2020) (emphasis added); *see also id.* at 224-25.

[6] *Wilkinson*, 601 U.S. at 213.

[7] 8 U.S.C. § 1252(a)(2)(B)(i); *see Wilkinson*, 601 U.S. at 218 ("§ 1252(a)(2)(B)(i) strips courts of jurisdiction over judgment[s] regarding the granting of [discretionary] relief under section . . . 1229b.") (internal quotation marks omitted).

[8] *Simantov v. Bondi*, No. 24-60487, 2025 WL 2587112, at *5 (5th Cir. Sept. 8, 2025) (published opinion).

[9] *Id.* at *5; *see also Guerrero-Lasprilla*, 589 U.S. at 228 ("[W]hether the historical facts found satisfy the legal test chosen" is a "so-called 'mixed question' of law and fact.") (quoting *U.S. Bank N.A. v. Village at Lakeridge, LLC*, 583 U.S. 387, 394 (2018)) (in turn quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982)).

No. 24-60445

We "review the BIA's decision and only consider the IJ's decision to the extent that it influenced the BIA."[10] We consider questions of law *de novo*, and we review findings of fact for substantial evidence.[11] "Under substantial evidence review, this court may not reverse the BIA's factual findings unless the evidence compels it."[12] In other words, "[t]he alien must show that the evidence was so compelling that no reasonable factfinder could conclude against it."[13] Calderon-Uresti has not shown such error.

Calderon-Uresti argues that "[a]ny reasonable fact finder would conclude on the basis of the evidence that Francisco Flores had subjected his wife to battery or extreme cruelty." She contends that the IJ and the BIA "departed from the given standard when [they] found, notwithstanding her credible testimony, that she was required to provide corroboration of the alleged abuse." The government counters that "substantial evidence supports the Agency's finding that Petitioner failed to sufficiently corroborate her testimony."

We recently heard near-identical arguments in *Simantov v. Bondi*, also in context of VAWA special rule cancellation. We follow that decision here. In *Simantov*, as here, the petitioner "aver[red] on appeal that his testimony alone was 'more than sufficient' to satisfy the statutory requirements[.]"[14] "When the IJ asked Simantov at the merits hearing why he did not produce supporting documentation, he gave a variety of responses" similar to Calderon-Uresti's—"such as that he forgot to locate the documents, he ran

---

[10] *Shaikh v. Holder*, 588 F.3d 861, 863 (5th Cir. 2009).

[11] *Id.* at 863.

[12] *Wang v. Holder*, 569 F.3d 531, 536-37 (5th Cir. 2009).

[13] *Id.*

[14] *Simantov*, 2025 WL 2587112, at *4.

out of time to locate them, . . . [or] his [abusive] ex-wife intentionally withheld them[.]"[15] Also as here, "Simantov [] challenge[d] the BIA's conclusion that he failed to meet the standard for VAWA-cancellation based on the facts he provided in his testimony" alone.[16]

The IJ found Simantov did not meet his statutory burden to prove battery or extreme cruelty, despite finding his testimony credible and seeing "no dispute in the record over the facts that Simantov allege[d] support his claim for VAWA-cancellation relief."[17] The BIA dismissed Simantov's appeal. We denied Simantov's petition for review because "[h]is failure to produce [] reasonably available corroborating evidence as requested by the IJ was thus 'fatal' to his applications for relief."[18]

That reasoning controls this case. "[O]ur review is deferential because the mixed question of law and fact presented here is primarily factual."[19] We uphold the BIA's disposition because the IJ and the BIA appropriately applied the law to the record. By statute, "[w]here the immigration judge determines that the applicant should provide evidence which corroborates otherwise credible testimony, such evidence must be provided unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence."[20] "The

---

[15] *Id.*

[16] *Id.* at *5.

[17] *Id.* at *2, *5.

[18] *Id.* at *4 (citing *Avelar-Oliva v. Barr*, 954 F.3d 757, 764 (5th Cir. 2020)).

[19] *Id.* at *5.

[20] 8 U.S.C. § 1229a(c)(4)(B).

determination of the immigration judge shall be based only on the evidence produced at the hearing."[21]

It was Calderon-Uresti's burden to bring evidence supporting her statutory eligibility.[22] The IJ and the BIA, far from "ignor[ing] Petitioner's unrebutted, legally significant" testimony as she claims, extensively analyzed that testimony and believed her accounts of abuse to be credible. But the BIA found that Calderon-Uresti's testimony alone did not clear the statutory threshold. As explicitly allowed by statute, the IJ found Calderon-Uresti could reasonably obtain corroborating evidence, and "determine[d] that the applicant should provide [that] evidence which corroborates otherwise credible testimony[.]"[23]

She never did. So even though Calderon-Uresti testified credibly, the BIA found her testimony alone fell below the evidentiary threshold for battery or extreme cruelty. We "may not reverse the BIA's factual findings unless the evidence compels it."[24] And we cannot say this record demands a different conclusion. The BIA noted numerous chances for Calderon-Uresti to obtain supporting evidence during the several months before her final removal hearing. As she failed to do so, the BIA found the record did not establish statutory eligibility for special rule cancellation. That conclusion is supported by substantial evidence. On appeal of a fact-bound determination

---

[21] *Id.* at § (c)(1)(A).

[22] *Id.* at §§ (c)(4)(A), (c)(4)(A)(i) ("An alien applying for relief or protection from removal has the burden of proof to establish that the alien . . . satisfies the applicable eligibility requirements").

[23] 8 U.S.C. § 1229a(c)(4)(B) ("Where the immigration judge determines that the applicant should provide evidence which corroborates otherwise credible testimony, such evidence must be provided unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence.").

[24] *Wang*, 569 F.3d at 536-37.

No. 24-60445

like this one, "[t]he alien must show that the evidence was so compelling that no reasonable factfinder could conclude against it."[25] Calderon-Uresti has not done so.

## III.

## A.

We turn now to regular rule cancellation. Calderon-Uresti also faults the BIA for not addressing her "apparent new eligibility for regular-rule cancellation of removal." The administrative exhaustion requirement divests our jurisdiction over this issue.

Regular rule cancellation, like special rule cancellation, is a statutory framework for discretionary relief from deportation.[26] VAWA special rule cancellation has more lenient eligibility criteria for victims of abuse; the criteria for regular rule cancellation are stricter. Among other differences, eligibility for regular rule cancellation requires ten years of presence in the United States (compared to three years for special rule cancellation). Regular rule cancellation also requires applicants to prove "exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States;" special rule cancellation requires proving only "extreme hardship to the alien, the alien's child, or the alien's parent."[27]

Calderon-Uresti originally applied for both special rule cancellation and regular rule cancellation. But as she last entered the country in 2011, and the IJ decided her case in 2019, she lacked the requisite ten years.[28] Her

---

[25] *Wang*, 569 F.3d at 537.

[26] 8 U.S.C. §§ 1229b(b)(1), (b)(2).

[27] 8 U.S.C. §§ 1229b(b)(1), (b)(2).

[28] *See* 8 U.S.C. § 1229b(b)(1)(A) (explaining that, under statutory eligibility requirements to apply for regular rule cancellation, an applicant must be "physically

counsel conceded at the hearing that "based on her entry date, she would not be eligible for ordinary cancellation," and she was therefore seeking "just VAWA cancellation." Calderon-Uresti did not raise the issue on appeal to the BIA, a fact to which we will return momentarily.

Calderon-Uresti argues she has now met the ten-year physical presence requirement due to intervening changes in the law. She rests on *Niz-Chavez v. Garland*, a 2021 Supreme Court case reinterpreting the "stop-time rule."[29] The stop-time rule states that "any period of continuous residence or continuous physical presence in the United States shall be deemed to end . . . when the alien is served a notice to appear[.]"[30] Before *Niz-Chavez*, "in cases where a notice to appear [did] not specify the time or place of an alien's initial removal hearing, the subsequent service of a notice of hearing containing that information perfect[ed] the deficient notice to appear[.]"[31] *Niz-Chavez* changed things. It held that the stop-time rule only triggers upon service of a *proper* notice of appearance—that is, one document with all necessary information about the removal hearing, including the date and time. Until the government serves one single document with all the details, the residency clock keeps ticking.[32]

Immigration authorities served Calderon-Uresti with a notice to appear on May 29, 2018. But that initial notice did not tell Calderon-Uresti when her removal hearing would be; it stated the hearing would occur at a

present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application.").

[29] 593 U.S. 155 (2021).

[30] 8 U.S.C. § 1229b(d)(1).

[31] *Matters of Mendoza-Hernandez & Capula-Cortes*, 27 I. & N. Dec. 520, 529 (BIA 2019) (en banc).

[32] *Niz-Chavez*, 593 U.S. 155.

No. 24-60445

date and time "[t]o be set." Calderon-Uresti got the scheduling information later. Under the law pre-*Niz-Chavez*, the stop-time rule was triggered when Calderon-Uresti separately received the date and time of her hearing.[33] But Calderon-Uresti contends that post-*Niz-Chavez*, because she was never served with the required single document, the stop-time rule never properly triggered in her case. And since the clock never stopped, she argues, she has now met the ten-year physical presence requirement to be eligible for regular rule cancellation. The IJ never reached her regular rule cancellation application due to a since-overruled reading of the stop-time rule, so Calderon-Uresti seeks remand for a decision on the merits of that application. The government does not address this issue in its brief.

## B.

We "may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right" before appealing to the courts.[34] "[I]f the allegation of BIA error presents 'a wholly new ground for relief arising only as a consequence of some error in the deportation proceedings' that the BIA 'never had a chance to consider,' rather than simply disagreement with the BIA's resolution of a previously urged issue, the error must be raised in the first instance before the BIA, either in a motion to reopen or a motion for reconsideration."[35]

---

[33] *See Mendoza-Hernandez*, 27 I. & N. Dec. at 529 ("We conclude that in cases where a notice to appear does not specify the time or place of an alien's initial removal hearing, the subsequent service of a notice of hearing containing that information perfects the deficient notice to appear, triggers the 'stop-time' rule, and ends the alien's period of continuous residence or physical presence in the United States.").

[34] 8 U.S.C. §§ 1252(d), (d)(1).

[35] *Avelar-Oliva*, 954 F.3d at 766 (quoting *Dale v. Holder*, 610 F.3d 294, 298-99 (5th Cir. 2010)).

Calderon-Uresti never raised regular rule cancellation arguments in her appeal before the BIA. That means we have no jurisdiction to consider them here. The Supreme Court decided *Niz-Chavez* in 2021—after the IJ pretermitted Calderon-Uresti's regular rule cancellation application based on the old interpretation of the stop-time rule, but *before* she appealed to the BIA in August 2022. That means Calderon-Uresti already had the benefit of *Niz-Chavez* when she filed her BIA appeal brief. She could have asserted that *Niz-Chavez* required reconsidering the IJ's decision about regular rule cancellation, but she never made that argument before the BIA. Instead, her BIA appeal brief only discusses VAWA special rule cancellation. It never once mentions regular rule cancellation and never cites *Niz-Chavez*. Although Calderon-Uresti also filed a motion to reopen after this appeal began, she did not apparently address the issue there either.[36]

Calderon-Uresti's current challenge to the regular rule cancellation decision, therefore, sets out "a wholly new ground for relief . . . that the BIA 'never had a chance to consider'" because it was not raised in the agency appeal.[37] Such "error must be raised in the first instance before the BIA, either in a motion to reopen or a motion for reconsideration."[38] As it was not, we do not have jurisdiction to consider this argument.

---

[36] Calderon-Uresti's motion to reopen is not in the appeal record before us, but her brief characterizes the motion as "based on demonstrating . . . her previously unavailable evidence regarding her battery that would change the outcome of [the BIA's] decision." We take this to mean Calderon-Uresti's motion did not address regular rule cancellation, for which battery would not be relevant. *See* 8 U.S.C. § 1229b(b)(1); *see also* Dkt No. 16 at 2 ("On October 28, 2024, while this petition was pending, Petitioner's new counsel also filed a motion to reopen with the Board to submit the corroborating evidence the Board said was lacking").

[37] *Avelar-Oliva*, 954 F.3d at 766.

[38] *Id.* (citing *Dale*, 610 F.3d at 298-99).

No. 24-60445

## IV.

With respect to special rule cancellation, Calderon-Uresti has not demonstrated the BIA's decision to be unsupported by substantial evidence. We are without jurisdiction to review her regular rule cancellation arguments. We accordingly DENY the petition for review.