# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

———————

No. 16-60059

———————

JATINDER SINGH,

     Petitioner

v.

JEFFERSON B. SESSIONS, III, U. S. ATTORNEY GENERAL,

     Respondent

———————

Petition for Review of an Order of the
Board of Immigration Appeals

———————

United States Court of Appeals
Fifth Circuit

**FILED**

January 23, 2018

Lyle W. Cayce
Clerk

Before SMITH, BARKSDALE, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Jatinder Singh petitions for review of the decision of the Board of Immigration Appeals ("BIA") affirming the decision of the Immigration Judge ("IJ") to deny Singh's application for asylum, withholding of removal, and protections under the Convention Against Torture ("CAT"). He challenges the IJ's adverse credibility determination, contending that his diagnosis with Post Traumatic Stress Disorder should have been taken into consideration when determining whether inconsistencies in his statements rendered his testimony not credible. For the following reasons, we deny the petition for review.

No. 16-60059

**I.**

Jatinder Singh, a young man from Punjab, India, entered the United States illegally in December 2014 at the age of 18. Shortly thereafter, the Department of Homeland Security ("DHS") initiated removal proceedings against Singh, charging that he was removable pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I) because he entered the country without valid entry documentation.

On December 30, 2014, Singh was interviewed by an Asylum Officer ("AO") to determine whether he had a credible fear of returning to India. Singh waived his right to have his attorney present at the interview. He told the AO that the police in India had arrested him in 2013 due to his father's political affiliation, beat him in January 2014, and "beat him up . . . many times." According to Singh, the police said that they were "going to kill [him] because [his] dad joined the Simrat Mann Jit party,"[1] a Sikh separatist party that advocates for a separate Sikh nation in Punjab called Khalistan. The AO asked if Singh was also a member of that party, and Singh replied, "No. Not me." The AO then noted that Singh had told agents at the border that he was afraid to return to India because he "would be harmed because of the party [he] supported," and asked him to explain the discrepancy. Singh said, "No, I did not say that. I was not with the party. It was my dad. First they beat my dad very badly too." He further explained that the police had taken his father in January 2011 and "beat[en] him up so much that he died because of the beating." When the AO asked if he ever showed support for the Mann party, Singh said "No, m[a'a]m. Not me. Never." Based on the interview, the AO determined that Singh was "not credible" because his "[t]estimony was

---

[1] The Simrat Mann Jit party is also known as the Shiromani Akali Dal Amritsar party.

internally inconsistent on material issues."

In March 2015, Singh filed an application for asylum, withholding of removal, and relief under CAT.  In his application, he stated that he was seeking protection based on his religion, political opinion, and membership in a particular social group.  He explained that, "[l]ike [his] father, [he] believe[d] in a [S]ikh sovereign nation," and that the "Indian Police and the Bharatiya Janata Party . . . tried to suppress [his] father's political opinion and affiliation as well as [his own]."  He further explained that his father was beaten by the police in 2011 and died as a result of the beatings, and that Singh himself was arrested and beaten by the police "to suppress [his] demand for Khalistan."

Leading up to Singh's removal proceedings, his attorney notified the IJ that Singh was "manifesting mental incompetency symptoms."  In May 2015, Singh filed a motion for a mental competency hearing and, with it, a psychological report from the Center for Survivors of Torture.  The report stated that due to his father's death and his own beating, Singh suffered from "moderate/severe psychological symptoms synonymous with Post Traumatic Stress Disorder [("PTSD")]," including "difficulty sleeping," "memories of the beatings he sustained and images of his father's suffering and death," "nightmares," and "constant headaches."

At a May 19, 2015 hearing before the IJ, Singh's attorney raised the motion for a competency hearing.  During a colloquy with the IJ, Singh's counsel stated that Singh was able to understand the nature of the proceedings and assist in his representation, and that he was capable of testifying to the court and responding rationally to questions.  Based on counsel's representations, the IJ determined that there was no need for a further mental-competency hearing.

The hearing proceeded to Singh's direct examination.  When asked whether he did anything to support the Simrat Mann Jit party, Singh stated

that he put up posters advocating for an independent Sikh nation. He further explained that the president of the party made him a member after his father's death. He also testified that had been beaten by the Indian police on two occasions, and that on each the police had accused him of advocating for a Sikh nation or being a Sikh terrorist.

The hearing was continued until August 3, 2015. In the interim, DHS filed a motion for consideration of mental health records and a DHS mental health review. The review diagnosed Singh with PTSD. When the hearing resumed in August, the IJ brought up the motion and asked Singh's attorney if he thought a mental competency hearing was necessary. Singh's attorney responded: "I don't understand when we've already done it. . . . We went through that. He's able to understand the proceedings . . . ." The IJ determined, based on the fact that Singh was able to "communicate with [his attorney] and rationally relate his testimony," that there was "no need for any other mental competency evaluation at th[at] point."

During Singh's cross-examination, he reiterated that he had been a member of the Simrat Mann Jit party since his father's death in 2011. When asked why he had denied being a member of that party during his credible-fear interview, he maintained that "[e]ven then I said I'm a member of the party . . . . Even then I said that; repeatedly I said that I'm a member of the party." Following his cross-examination, Singh's attorney declined to conduct a redirect examination.

In support of his claim, Singh also submitted his father's death certificate, stating that his father died on January 10, 2011; a hospital report, dated August 4, 2015, stating that Singh had been treated in January 2013 for "blunt injury on whole body;" a statement from the president of the Simrat Mann Jit party stating that Singh was a member of the party; and statements from his mother and uncle generally corroborating his testimony.

The IJ found that Singh was not credible. In making that adverse credibility determination, the IJ pointed to two inconsistences in Singh's testimony: "whether [he] was ever a member of the Mann Party and whether [he] ever participated with or showed any support for the Mann Party." The IJ found that Singh's testimony with respect to his party membership and activity was inconsistent between his credible-fear interview and his testimony at the hearing, and that he had failed to credibly explain the inconsistency when given the opportunity to do so. With respect to the documentary evidence submitted, the IJ found that it did not establish Singh's credibility because the death certificate and medical records did not state the causes of death or injury, the statements from the party president and Singh's family were inconsistent with Singh's statements to the AO, and because his mother and uncle were interested witnesses not subject to cross examination.

As to Singh's mental competency, the IJ determined that, despite his PTSD diagnosis, Singh was competent to participate in the removal proceedings because he was able to communicate with his attorney and rationally relate his testimony to the court. Accordingly, because he "presented testimony in a coherent, linear manner," the IJ determined that *Matter of J-R-R-A-* did not require a finding that Singh's alleged fear of harm was subjectively genuine. *See Matter of J-R-R-A-*, 26 I & N Dec. 609 (BIA 2015) (holding that when applicant is deemed incompetent or is unable "to provide testimony in a coherent, linear manner" due to "mental illness or serious cognitive disability," the IJ "should, as a safeguard, generally accept that the applicant believes what he has presented, even though his account may not be believable to others or otherwise sufficient to support the claim").

In light of the adverse credibility determination, the IJ concluded that Singh had not shown that he was persecuted in the past in India or that there was a reasonable possibility that he would be persecuted if he returned.

Accordingly, the IJ determined that Singh was not eligible for asylum or withholding of removal. Similarly, the IJ found that Singh had not established that he was tortured in the past in India or that it was more likely than not that he would be tortured if he returned, and that he was therefore not eligible for CAT protections.

Singh appealed the IJ's decision to the BIA, which affirmed the IJ and dismissed the appeal. The BIA found that the IJ's competency determination was not clearly erroneous because Singh's ability to appropriately answer the questions posed to him and his attorney's representations regarding Singh's ability to communicate rationally were indicia of competency. The BIA also agreed with the IJ's determination that, because Singh's mental-health issues "did not affect his ability to provide reliable testimony, the safeguards described in *Matter of J-R-R-A-* . . . [were] inapplicable." Finally, the BIA affirmed the IJ's adverse credibility determination, agreeing that Singh's explanation for his inconsistent testimony was insufficient.

Singh then petitioned this court for review of the BIA's decision. He does not challenge the determination that he was competent to proceed with the hearing.[2] Rather, he contends only that his credibility should have been assessed in light of the expert medical reports and his PTSD diagnosis, and that the *J-R-R-A-* presumption should have been applied. For the following reasons, we disagree and deny Singh's petition for review.

## II.

We have authority to review only the decision of the BIA, not the IJ, unless the IJ's decision influenced the BIA's decision. *Efe v. Ashcroft*, 293 F.3d 899, 903 (5th Cir. 2002). Here, the BIA found that the IJ's

---

[2] While Singh's initial brief appeared to challenge the competency determination, he conceded at oral argument that the standard for competency was met and that he therefore does not challenge the finding that he was competent.

adverse credibility determination was not clearly erroneous, essentially adopting the IJ's reasoning.  Accordingly, we have authority to review the IJ's decision as well as that of the BIA.  *See Kompany v. Gonzales*, 236 F. App'x 33, 37 (5th Cir. 2007); *Mikhael v. I.N.S.*, 115 F.3d 299, 302 (5th Cir. 1997).

We review an immigration court's findings of fact for substantial evidence.  *Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009).  "[I]t is the factfinder's duty to make determinations based on the credibility of witnesses." *Chun v. I.N.S.*, 40 F.3d 76, 78 (5th Cir. 1994).  However, "an adverse credibility determination still 'must be supported by specific and cogent reasons derived from the record.'"  *Wang*, 569 F.3d at 537 (quoting *Zhang v. Gonzales*, 432 F.3d 339, 344 (5th Cir. 2005)).  "[A]n IJ may rely on any inconsistency or omission in making an adverse credibility determination as long as the 'totality of the circumstances' establishes that an asylum applicant is not credible."  *Id.* at 538 (emphasis omitted) (quoting *Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008)); *see also id.* at 539 (adopting Second Circuit's standard).  "We defer therefore to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling."  *Id.* at 538 (quoting *Lin*, 534 F.3d at 167).  In other words, we will not reverse a credibility determination unless the evidence compels it.  *Id.* at 536– 40.

In *Matter of J-R-R-A-*, the BIA "provide[d] guidance regarding credibility assessments in cases involving aliens who are incompetent or who have serious mental-health or cognitive issues that may affect their testimony."  26 I & N Dec. at 610.  It explained that where an applicant is "deemed incompetent by the Immigration Judge" or deemed competent but diagnosed with a "mental illness or serious cognitive disability" resulting in "symptoms that affect his ability to provide testimony in a coherent, linear manner," then "the factors that would otherwise point to a lack of honesty in a witness—including

inconsistencies . . . —may be reflective of a mental illness or disability, rather than an attempt to deceive the Immigration Judge." *Id.* at 611. Accordingly, it concluded that "where a mental health concern may be affecting the reliability of the applicant's testimony, the Immigration Judge should, as a safeguard, generally accept that the applicant believes what he has presented, even though his account may not be believable to others or otherwise sufficient to support the claim." *Id.* at 612.

Singh argues that the IJ should have applied that safeguard, but his reliance on *Matter of J-R-R-A-* is misplaced. *Matter of J-R-R-A-* contemplates applicants who are deemed incompetent or who have "a mental illness or serious cognitive disability" that "affect[s] [their] ability to provide testimony in a coherent, linear manner." *Id.* at 611. Its safeguard is to be applied not in every case where an applicant has a mental health concern, but rather where "a mental health concern may be affecting the reliability of the applicant's testimony." *Id.* at 612. Here, Singh was found to be competent, and he does not now challenge that factual determination. Furthermore, there was no indication that Singh's PTSD affected his testimony or ability to speak in a coherent and linear manner. To the contrary, his attorney represented to the IJ that Singh was capable of testifying, responding to questions, and rationally explaining his case. Additionally, after observing Singh's direct examination, the IJ found that he could "rationally relate his testimony." Singh does not challenge that finding. Accordingly, the safeguard provided for in *Matter of J-R-R-A* was not implicated.

While it is true that there was no specific finding of competency at the time of the credible-fear interview—when he made the inconsistent statements—Singh was given an opportunity to explain the inconsistent statements during the removal proceedings—when he was deemed competent—and failed to do so. When asked to explain the inconsistencies on

8

cross-examination, Singh simply denied them, maintaining that he had told the AO that he was a member of the Simrat Mann Jit party. Singh's attorney then declined the opportunity to question Singh on redirect.

Absent application of the safeguard set forth in *Matter of J-R-A-*, we cannot say that no reasonable fact-finder could have made an adverse credibility determination. Singh's statements during his credible-fear interview regarding his party affiliation were contrary to his later statements before the IJ. Furthermore, in his petition for review, Singh does not challenge the reliability of the credible-fear interview or the IJ's reliance on it in making the adverse credibility determination. In any event, the record of the credible-fear interview bears sufficient indicia of reliability to be relied upon in making an adverse credibility determination. *See Ramsameachire v. Ashcroft*, 357 F.3d 169, 179–80 (2d Cir. 2004). While the record of the interview is a summary and not a verbatim transcript, it is clear from the record that the AO asked follow up questions to enable Singh to develop his account, and there is no indication that Singh was reluctant to reveal relevant information or that he was unable to understand the questions asked. *See id.* at 180. In light of the inconsistencies in Singh's statements and his failure to explain the inconsistencies when given the opportunity to do so—beyond merely denying them—the record does not compel the conclusion that he was credible.

Nor does the documentary evidence Singh submitted compel such a conclusion. Singh has failed to show that the documentary evidence—including the statements of his mother and uncle, interested parties not subject to cross examination, and the death certificate and medical records, which did not indicate the causes of death or injury—was so compelling that no reasonable fact-finder could make an adverse credibility ruling. In light of the weaknesses in that evidence, as identified by the IJ and affirmed by the

BIA, and Singh's inconsistent statements, we cannot say that the evidence compels the conclusion that he was credible.

Singh has failed to show that no reasonable fact-finder could make an adverse credibility ruling, and we therefore must defer to the determinations of the IJ and BIA that his testimony was not credible. *See Wang*, 569 F.3d at 538. Because we do not disturb the adverse credibility determination, we must deny Singh's petition for review.

PETITION DENIED.