# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 11, 2022

Lyle W. Cayce
Clerk

No. 21-60513
Summary Calendar

---

Joel Agweh Akuchu,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

---

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A213 475 405

---

Before King, Costa, and Ho, *Circuit Judges*.

Per Curiam:*

Joel Agweh Akuchu petitions for review of the Board of Immigration Appeals's decision denying him asylum and withholding of removal. The petition is denied.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-60513

## I.

Akuchu is a native and citizen of Cameroon who arrived in the United States on November 19, 2019. He conceded removability and filed an application for asylum, withholding of removal, and protection under the Convention Against Torture.[1] Akuchu claimed a fear of future harm in Cameroon due to his political opinion and membership in the particular social groups of "Anglophones who are opposed to marginalization" and "Anglophones who speak against the government."

On April 14, 2018, after a shoot-out occurred in Akuchu's neighborhood, government forces went door-to-door searching for separatists and sympathizers. They believed that Akuchu was a separatist based on various group chats on his phone, and took him to a police station in Bamenda, Legion. There, they handcuffed him to a pipe, poured water on him, beat the soles of his feet, and spit on him. They further beat him with a machete, the butt of a gun, a stick, and a belt.

The next day, April 15, Akuchu's brother paid a commanding officer so that Akuchu could receive medical attention. Akuchu was escorted to a hospital by two officers who threatened to kill him if he did not reveal where separatist fighters were hiding. Akuchu spent four days in that hospital, until his brother helped orchestrate his escape by encouraging an officer at the hospital to pretend to ignore the escape. Thereafter, Akuchu fled to his uncle's village, where he stayed for three months.

Akuchu's brother then called him at his uncle's residence to inform him that a warrant was issued for Akuchu's arrest. Akuchu's wife visited him later that week and told him that the military came to their home with that

---

[1] Akuchu has ceased arguing for protection under the Convention Against Torture, so we do not address this issue further.

warrant; the military further threatened his wife that if she did not disclose Akuchu's whereabouts, they would arrest her, though she was never arrested. The military then went to Akuchu's uncle's home, but Akuchu was not there at the time. Akuchu then fled for Douala, and shortly after began to receive calls from the military forces demanding that he turn himself in and threatening to kill him. He then fled Douala for Yaoundé, traveling 150 miles. Eventually, Akuchu, using his own personal passport, passed through five security checkpoints and flew out of the country before ultimately arriving in the United States.

The immigration judge ("IJ") issued an oral decision denying Akuchu's application. The IJ found that Akuchu's testimony was not credible because she found the story implausible—first because, despite the numerous threats against Akuchu and his family, his wife and children remain at his residence unharmed; and second because, despite there being an arrest warrant for Akuchu, he was able to proceed through five security checkpoints in the country unharmed and fly to Ecuador using his own passport. The IJ further found his hospital escape implausible, given the multiple officers at the scene of the hospital. To bolster his testimony, Akuchu also submitted affidavits from his wife and brother, as well as a medical report from the hospital where he was treated. The IJ found this corroborating evidence unpersuasive because those affidavits contained dates inconsistent with Akuchu's testimony of events and also because the affidavits contained nearly identical language that repeated both substantive and typographical mistakes, suggesting a lack of actual knowledge. As to the medical documentation, the IJ gave it limited evidentiary value because it did not give any information that supported Akuchu's particular injuries were from military forces.

Akuchu appealed, and the Board of Immigration Appeals ("BIA") denied the appeal. The BIA found that the IJ did not err in finding Akuchu's

testimony unreliable and insufficient to support his burden of proof, and it affirmed the IJ's determination that the respondent provided insufficient corroborating evidence. Finally, the BIA declined to consider documents submitted for the first time on appeal because the evidence was not previously unavailable.

Akuchu timely petitions this court for review. He argues the BIA erred when it held that he was not a credible witness, and that he therefore failed to establish past persecution.

## II.

"When . . . the BIA affirms the immigration judge and relies on the reasons set forth in the immigration judge's decision, this court reviews the decision of the immigration judge as well as the decision of the BIA." *Ahmed v. Gonzales*, 447 F.3d 433, 437 (5th Cir. 2006). Questions of law are reviewed *de novo*, but factual findings are reviewed for substantial evidence. *Gjetani v. Barr*, 968 F.3d 393, 396 (5th Cir. 2020). Substantial evidence review "requires only that the Board's conclusion be based upon the evidence presented and that it be substantially reasonable." *Carbajal-Gonzalez v. INS*, 78 F.3d 194, 197 (5th Cir. 1996) (quoting *Wilson v. INS*, 43 F.3d 211, 213 (5th Cir. 1995)). Thus, reversal is proper only if the petitioner shows "that the evidence was so compelling that no reasonable factfinder could conclude against it." *Wang v. Holder*, 569 F.3d 531, 537 (5th Cir. 2009) (citing *INS v. Elias-Zacarias*, 502 U.S. 478, 483–84 (1992)).

## III.

To qualify for asylum, an applicant "must demonstrate either past persecution or a reasonable, well-founded fear of future persecution on account of" his race, religion, nationality, membership in a particular social group, or political opinion. *Milat v. Holder*, 755 F.3d 354, 360 (5th Cir. 2014). An applicant may satisfy this test by credibly testifying that he or she

genuinely fears persecution by his or her government and that such fear is a reasonable one. *Eduard v. Ashcroft*, 379 F.3d 182, 189 (5th Cir. 2004); *Wang*, 569 F.3d at 537. "[C]redibility determinations that are unsupported by the record and are based on pure speculation or conjecture will not be upheld, but if the IJ's credibility determinations are supported by the record, they will be affirmed." *Wang*, 569 F.3d at 537. Relevant factors for the IJ to consider include:

> the demeanor, candor, or responsiveness of the applicant or witness, *the inherent plausibility of the applicant's or witness's account*, the consistency between the applicant's or witness's written and oral statements . . . , the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . , and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii) (emphasis added).

Here, the IJ concluded that Akuchu's story was implausible. Because the IJ made these findings based on the record evidence, and not her own speculation, this court is not in the position to find otherwise. *See Wang*, 569 F.3d at 539–40 ("The IJ has extensive experience with witnesses who assert persecution . . . . [and] [a]n appellate court is not in a position to judge [an applicant's] demeanor, and the IJ was not required to accept [the applicant's] testimony as true in the face of inconsistencies and verbal and nonverbal cues of deception."); *see also Jiangqing Lin v. Lynch*, 645 F. App'x 306, 308 (5th Cir. 2016) (upholding an adverse-credibility determination where the IJ found the story that a government was searching for the applicant implausible when that applicant left the country using his own passport); *Gebresadik v. Holder*, 336 F. App'x 453, 454–55 (5th Cir. 2009) (upholding an adverse-

credibility determination where the IJ found the applicant's story of escape implausible).

The IJ and BIA were similarly permitted to find the affidavits unpersuasive. Here, the affidavits submitted to the court contained identical paragraphs, spelling errors, and erroneous dates. In light of these issues, the IJ was permitted to give these affidavits limited weight. *See*, *e.g.*, *Hong Lin v. Holder*, 383 F. App'x 393, 395 (5th Cir. 2010) (noting that the "IJ's concerns over the credibility of the affidavit purportedly provided by [the applicant's] father are understandable given the similarities between that affidavit and [the applicant's] asylum application"). Finally, the IJ did not err in giving limited weight to the medical documentation from the hospital, as that documentation did not actually associate Akuchu's injuries with harm from government forces. *Cf. Singh v. Sessions*, 880 F.3d 220, 226 (5th Cir. 2018) (finding of limited value medical records "which did not indicate the causes of . . . injury").

In conclusion, because the IJ based her adverse-credibility determination on record evidence rather than mere conjecture, we must defer to the IJ and BIA's conclusion that Akuchu was not credible. And because we do not disturb the IJ and BIA's adverse-credibility determination, we must deny Akuchu's petition for review.

PETITION DENIED.