# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 1, 2022

Lyle W. Cayce
Clerk

No. 20-60038

Steven Tendo,

*Petitioner*,

*versus*

Merrick Garland, U.S. Attorney General,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A 201 520 012

Before King, Elrod, and Southwick, *Circuit Judges*.

Per Curiam:[*]

Steven Tendo, a native and citizen of Uganda, filed three petitions for review from orders of the BIA. The BIA affirmed the IJ's adverse-credibility ruling, denied Tendo's motion to reopen, and denied Tendo's motion to reconsider the BIA's denial of reopening. Tendo petitions for review of each order, and these petitions have been consolidated on appeal. Because of the

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-60038

numerous basses for the adverse-credibility determination and the deferential standard of review for denials of motions to reopen, we DENY the petitions for review.

I

Tendo arrived in the United States in December 2018 seeking asylum, withholding of removal, and protection under the Convention Against Torture (CAT). He alleged that he suffered severe persecution at the hands of the Ugandan government on account of his nonprofit organization, Eternal Life Organization International Ministries (ELOI Ministries). Specifically, Tendo alleges that the government of Uganda retaliated against him for a youth-voter registration campaign conducted by ELOI Ministries. Tendo alleges a series of persecutory actions by the Ugandan government in the form of over 20 false arrests during many or all of which he was tortured.

For instance, in 2012, Tendo says that he was kidnapped at gunpoint and taken to a "safe house," where he was tortured for information about ELOI's funding. Over the course of over three weeks, Tendo's interrogators starved him, beat him, and cut off the tips of two fingers piece by piece. The interrogators placed him in a room with a python—whose head was suspended to keep it from eating him and to cause it to whip its tail, whipping and bruising Tendo. Eventually, his family discovered where he was and petitioned successfully for his release.

The IJ denied Tendo's application for relief based on the determination that Tendo's testimony was not credible. The IJ found support for its adverse-credibility determination in Tendo's frequent travel to and from Uganda and five inconsistencies between testimony and evidence. Those five inconsistencies were: (1) Tendo's birth date, (2) whether he travelled to the UAE, (3) the details of his arrests, (4) the process he received in prisons, and (5) how he was related to his alleged relatives. The IJ also held that

2

Tendo failed to corroborate several parts of his story, including by failing to provide medical records related to his 2012 torture, proof that he was *illegally* detained in 2014, and proof of certain familial relationships.

Assuming *arguendo* that Tendo was credible, the IJ also addressed the merits of Tendo's claims. Regarding his asylum claim, the IJ held that Tendo had not shown that the Ugandan government was unable or unwilling to protect him, as evidenced by, among other factors, the fact that Tendo was repeatedly granted bail, acquitted of some criminal charges, and granted a Ugandan passport. With respect to CAT relief, the IJ held that because "there is simply too much evidence [that] the Ugandan government has repeatedly afforded [Tendo] due process of law," Tendo could not show that the Ugandan government would acquiesce in or turn a blind eye to his harm.

Tendo appealed to the BIA and requested a remand. The BIA affirmed the IJ's adverse-credibility finding. Tendo moved to reopen, and included new evidence of his torture and threats to his family back in Uganda. The BIA determined that the evidence did not warrant reopening because it did not rehabilitate his adverse-credibility determination. Tendo also motioned to reconsider the denial of his motion to reopen.

## II

"We generally have 'authority to review only the decision of the BIA . . . .' However, we may also review the IJ's decision if 'the IJ's ruling affects the BIA's decision.'" *Ndudzi v. Garland*, 2022 WL 2827646, at *2 (5th Cir. July 20, 2022) (quoting *Zhu v. Gonzales*, 493 F.3d 588, 593 (5th Cir. 2007)).

We review adverse-credibility determinations for substantial evidence. *Singh v. Sessions*, 880 F.3d 220, 224–25 (5th Cir. 2018). We "defer therefore to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Wang v. Holder*, 569 F.3d 531, 538 (5th Cir. 2009)

(quoting *Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008)). Even so, "an adverse credibility determination still 'must be supported by specific and cogent reasons derived from the record.'" *Singh*, 880 F.3d at 225 (quoting *Wang*, 569 F.3d at 537). "[A]n IJ may rely on any inconsistency or omission in making an adverse credibility determination as long as the 'totality of the circumstances' establishes that an asylum applicant is not credible." *Id.* (alteration in original) (quoting *Wang*, 569 U.S. at 538); *see also* 8 U.S.C. § 1158(b)(1)(B)(iii). "Moreover, even if the Board erred at some point in its analysis, we can still uphold its ultimate decision if 'there is no realistic possibility' that the Board's conclusion would have been different absent the error. *Nguhlefeh Njilefac v. Garland*, 992 F.3d 362, 365 (5th Cir. 2021) (quoting *Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 407 (5th Cir. 2010)).

## A.

Tendo contends that the BIA erroneously affirmed the IJ's adverse-credibility determination, alleging that the BIA should only grant deference to inconsistencies "central to the [alien's] persecution claims." However, The REAL ID Act clarified that "a trier of fact may base a credibility determination on . . . any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). Applying The REAL ID Act, this court reviews adverse-credibility determinations by deferring to all inconsistencies identified by the IJ, regardless of their centrality to the applicant's case, and there is no reason that the BIA's standard of review should be different. *See e.g.*, *Ghotra v. Whitaker*, 912 F.3d 284 (5th Cir 2019) ("The BIA 'may rely on *any* inconsistency or omission in making an adverse credibility determination as long as the totality of the circumstances establishes that an asylum applicant is not credible.'") (emphasis original) (internal quotation marks omitted) (quoting *Wang*, 569 F.3d at 538)). Furthermore, the BIA may "not engage in de novo review of findings of fact determined by an

No. 20-60038

immigration judge," but rather reviews "only to determine whether the findings of the immigration judge are clearly erroneous." 8 C.F.R. § 1003.1(d)(3)(i); *see also* 8 C.F.R. § 1003.1(d)(3)(iv)(A) ("The Board will not engage in factfinding in the course of deciding cases . . . .").

Tendo also argues that substantial evidence does not support the IJ's adverse-credibility determination. Specifically, Tendo contends that there is no inconsistency between a letter from a Remand Prison Kampala officer stating that Tendo was admitted to prison in June, 2012 and his testimony regarding his imprisonment. However, even if there is no inconsistency here, the IJ identified five other "specific and cogent reasons derived from the record" for the adverse-credibility determination. *Wang*, 569 F.3d at 537 (quoting *Zhang v. Gonzales*, 432 F.3d 339, 344 (5th Cir 2009)); *See also Sun v. Barr*, 754 F. App'x 294, 295 (5th Cir. 2019) ("[W]e agree with the BIA that the three other [permissible] bases identified satisfy the substantial evidence threshold for upholding an adverse credibility determination."). Even "small inconsistencies, when added up could support an adverse credibility finding," and none of the inconsistencies identified by the IJ are trivial. *Ndudzi*, 2022 WL 2827646, at *6. We therefore find that the IJ did not err in its adverse-credibility determination.

## B.

Tendo also petitioned for review of the BIA's denial of his motion to reopen immigration proceedings. This court reviews the denial of motions to reopen under "a highly deferential abuse-of-discretion standard" and will "affirm the BIA's decision as long as it is not capricious, without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach." *Gomez-Palacios v. Holder*, 650 F.3d 354, 358 (5th Cir. 2009).

No. 20-60038

Contrary to Tendo's claim, the BIA applied the correct standard of review. Citing *Matter of F-S-N-*, 28 I. & N. Dec. 1, 3 (BIA 2020), the BIA determined that Tendo "must either overcome the prior [adverse-credibility] determination or show that the new claim is independent of the evidence that was found not to be credible." Because new evidence "must be likely to change the result in the case," this test flows naturally from the nature of attempting to reopen proceedings against the backdrop of an adverse-credibility determination. *See Qorane v. Barr*, 919 F.3d 904, 912 (5th Cir. 2019).

Tendo has not met that burden. Despite the new evidence, Tendo failed to present anything "likely to change the result" in the case." *Id.* Even assuming Tendo's evidence addresses some of the inconsistencies surrounding his arrest and torture, it is not enough to overcome the other adverse credibility findings identified by the IJ in its adverse-credibility determination, much less show abuse of discretion by the BIA. Furthermore, Tendo has also not established a basis for relief independent of the prior adverse-credibility determination. Rather, Tendo's "new" evidence does not disturb the previous adverse-credibility determination and simply serves as a continuation of the claim already found incredible.

## C.

Tendo petitioned for review of the BIA's order denying his motion to reconsider the denial of his motion to reopen. We have found that the BIA used the proper standard of review in its denial of reopening and that the IJ's decision was supported by substantial evidence. This leaves only Tendo's claim that the IJ relied on extra-record evidence during the proceedings.

Tendo raised this claim for the first time in his motion to reopen, and the BIA held that the issue was forfeited. The BIA is correct that Tendo forfeited this issue. And because it was not raised on direct appeal and the BIA did not address it on the merits, it is unexhausted, and we lack jurisdiction to

No. 20-60038

consider it. *See Martinez-Guevara v. Garland*, 27 F.4th 353, 361 (5th Cir 2022). While "subsequent variations in analysis or changes in the scope of an argument do not render an issue unexhausted," this specific extra-record-reliance claim is not fairly included in Tendo's clear-error challenge to the adverse-credibility ruling. *Vazquez v. Sessions*, 885 F.3d 862, 868 (5th Cir. 2018). The BIA cannot be required to comb through the record to find extra-record reliance without being directed to it.

*            *            *

For the above reasons, we DENY in part and DISMISS in part Tendo's application for review.