# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 4, 2022

Lyle W. Cayce
Clerk

No. 21-60370

Sayda Sarai Cordero-Chavez,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order
of the Board of Immigration Appeals
BIA No. A206 703 798

Before Clement, Duncan, and Wilson, *Circuit Judges*.
Stuart Kyle Duncan, *Circuit Judge*:

Sayda Sarai Cordero-Chavez petitions for review of the dismissal of her application for asylum and withholding of removal. She claimed abuse by a former boyfriend and gang member, but the immigration judge ("IJ") denied her application because she did not find Cordero-Chavez credible. The Board of Immigration Appeals ("BIA") affirmed the IJ's credibility finding and also concluded Cordero-Chavez did not raise a claim under the Convention Against Torture ("CAT") before the IJ. We deny the petition.

No. 21-60370

## I.

Cordero-Chavez, a native and citizen of El Salvador, entered the United States without inspection in July 2014. Shortly thereafter, the U.S. Department of Homeland Security ("DHS") detained her and initiated expedited removal proceedings. After Cordero-Chavez expressed fear of returning to El Salvador due to an abusive former boyfriend (and current MS-13 gang member), an asylum officer conducted a credible-fear interview. *See* 8 C.F.R. § 208.30. Based on this interview, the officer concluded Cordero-Chavez did not have a credible fear of persecution. But an IJ reversed the officer's findings, and Cordero-Chavez received full removal proceedings.

At an initial hearing, the IJ asked Cordero-Chavez's attorney what relief she was seeking, to which the attorney responded, "Asylum and withholding of removal." The attorney said nothing about CAT relief. Cordero-Chavez then filed an asylum application (Form I-589), which is also deemed an application for withholding of removal. *See* 8 C.F.R. § 1208.3(b). On the form, Cordero-Chavez left blank a box asking whether she "also want[ed] to apply for withholding of removal under the Convention Against Torture." Elsewhere on the form, she checked a box indicating she sought asylum or withholding based on "Membership in a particular social group," while leaving blank a nearby box marked "Torture Convention." On the next page of her application, however, she answered "Yes" to a question asking whether she was "afraid of being subjected to torture" in her home country. Her explanation stated she feared being killed by her former boyfriend.

At her removal hearing, Cordero-Chavez testified through an interpreter and was represented by counsel. The IJ found that Cordero-Chavez made inconsistent statements during her hearing, on her asylum application, and at her credible-fear interview. These inconsistencies concerned (1) the severity and frequency of her abuse; (2) her abuser's

connection to Salvadoran police officers; (3) the identity of someone who sent her threatening Facebook messages; and (4) a threatening letter allegedly sent to her family's residence. Based on these inconsistences, the IJ concluded Cordero-Chavez was not entitled to asylum or withholding of removal because she was not credible. The IJ did not consider a CAT claim.

Cordero-Chavez appealed to the BIA, which adopted and affirmed the IJ's decision. The BIA found the IJ's adverse credibility determination "not clearly erroneous" because it "was supported by specific and cogent reasons." In a footnote, the BIA stated that Cordero-Chavez "appears to argue that she might be eligible for protection pursuant to . . . [CAT]." But the BIA concluded Cordero-Chavez did not raise a CAT claim because (1) she failed to check any box on her I-589 specifically requesting CAT relief, and (2) her attorney failed to state that she was seeking CAT relief when specifically asked by the IJ. The BIA therefore dismissed the appeal. Cordero-Chavez timely petitioned this court for review.

## II.

We review the BIA's decision along with "the IJ's findings and conclusions" to the extent the BIA adopted them. *Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009). We review factual findings "for substantial evidence" and legal conclusions *de novo. Soriano v. Gonzales*, 484 F.3d 318, 320 (5th Cir. 2007). When reviewing credibility determinations, we defer to the fact-finder's determinations "unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Wang*, 569 F.3d at 538.

No. 21-60370

### III.

On appeal, Cordero-Chavez argues the BIA and IJ (1) clearly erred in finding her testimony not credible and (2) erred by failing to consider her CAT claim.[1] We consider each issue in turn.

### A.

First, Cordero-Chavez contests the IJ's credibility conclusions, arguing that her statements about her abuse were consistent and that other inconsistent statements were the result of her own confusion and miscommunication.[2] When making adverse credibility determinations "an IJ may rely on *any* inconsistency or omission." *Wang*, 569 F.3d at 538. This includes inconsistencies between the applicant's statements made at a credible-fear interview, during her testimony, and on her asylum application. *See Singh v. Sessions*, 880 F.3d 220, 226 (5th Cir. 2018).

Although the IJ found Cordero-Chavez made various inconsistent statements, she attacks only the IJ's finding that she made inconsistent

---

[1] Alternatively, Cordero-Chavez asks us to remand her case due to an intervening change in the law and a change in DHS prosecutorial policy. While the new case that Cordero-Chavez cites may alter the import of domestic violence in the asylum analysis, *see Matter of A-C-A-A-*, 289 I&N Dec. 351 (A.G. 2021), the BIA's denial of asylum and withholding of removal claims was premised on an adverse credibility determination. Therefore, the change in the law does not "render[] [the BIA's] order unsustainable." *Kane v. Holder*, 581 F.3d 231, 242 (5th Cir. 2009). As for the change in prosecutorial policy, except as otherwise provided by statute, "[n]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g); *accord Vilchiz-Soto v. Holder*, 688 F.3d 642, 644 (9th Cir. 2012). Therefore, remand is inappropriate.

[2] Cordero-Chavez also attempts to explain the discrepancies by arguing that, as a domestic-abuse victim, she suffers from memory lapses. But she did not make this argument before the BIA, and so we will not consider it. *See Martinez-Guevara v. Garland*, 27 F.4th 353, 361 (5th Cir. 2022).

statements regarding her abuse. Specifically, the IJ found that her account of the severity and frequency of her abuse changed between her credible-fear interview and her hearing testimony. In her credible-fear interview, she stated only that her former boyfriend pushed and sexually assaulted her. But at her removal hearing, her account of the abuse was much more severe and specific: her boyfriend sexually assaulted her seven or eight times, slashed her with a knife, and beat her. Contrary to Cordero-Chavez's argument, the IJ properly relied on such inconsistencies in the details of her abuse to find her not credible. *See, e.g.*, *Avelar-Oliva v. Barr*, 954 F.3d 757, 768 (5th Cir. 2020) (IJ's credibility determination properly relied on petitioner omitting certain details of her abuse at her credible-fear interview).

In addition, the IJ found Cordero-Chavez made inconsistent statements about her former boyfriend's connection with the police, his attempts to contact her through Facebook, and a threatening letter sent to her family's residence. Cordero-Chavez argues these inconsistencies were due to a combination of confusion, nervousness, and miscommunication while interviewing with an asylum officer. But an IJ is not required to accept a "petitioner's explanation for . . . inconsistencies in her story." *Morales v. Sessions*, 860 F.3d 812, 817 (5th Cir. 2017) (citation omitted). Furthermore, during the hearing, the IJ found Cordero-Chavez's excuses made little sense.

In sum, the IJ acted squarely within her authority in finding Cordero-Chavez's account not credible and denying her claims accordingly. Because nothing in the record supports a conclusion "that no reasonable factfinder could disbelieve" Cordero-Chavez, we cannot disturb the IJ's credibility determination on appeal. *Wang*, 569 F.3d at 540.

B.

Next, we turn to Cordero-Chavez's argument that the BIA and IJ mistakenly failed to consider her CAT claim. The BIA concluded Cordero-Chavez did not raise a CAT claim because she did not mark either of the boxes on her I-589 that asked whether she wished to pursue CAT relief. Additionally, responding to the IJ's direct question about what relief she sought, Cordero-Chavez's attorney stated "asylum and withholding of removal," while saying nothing about CAT. In response, Cordero-Chavez contends she did raise a CAT claim because, on her asylum form, she responded affirmatively to a separate question asking whether she "was afraid of being subjected to torture" if returned to El Salvador. We agree with the BIA that Cordero-Chavez failed to assert a CAT claim.

The Government appropriately brings up the most relevant authority on this issue: our decision in *Eduard v. Ashcroft*, 379 F.3d 182 (5th Cir. 2004). In *Eduard*, we explained that CAT relief "is a separate claim from withholding of removal" and that "applicants must demonstrate some specific intent to raise a [CAT claim]." *Id.* at 195 (citing *Efe v. Ashcroft*, 293 F.3d 899, 906–07 (5th Cir. 2002)); *see also* 8 C.F.R. §§ 208.16(c)(4), 208.18(b). We concluded that petitioners raised a CAT claim by responding "Yes" to a question on their asylum application asking whether they "fear[ed] being subjected to torture" in their home country. *Eduard*, 379 F.3d at 195–96. We thought the form's separate "torture" inquiry "might lead an applicant to believe he has raised a claim for CAT relief." *Id.* at 196. We also emphasized that because "there is no separate and distinct procedure for seeking CAT relief," petitioners' affirmative responses to the inquiry constituted CAT claims. *Id.* The Government argues that factual differences distinguish this case from *Eduard*. We agree.

Cordero-Chavez twice chose, through counsel, not to check boxes expressly asking whether she sought CAT relief. What those boxes convey is quite clear. Here's the first one, from the top of the first page of the I-589:

> **NOTE:** ☐ Check this box if you also want to apply for withholding of removal under the Convention Against Torture.

By not checking that box, Cordero-Chavez plainly conveyed she did not "want to apply for withholding of removal under the Convention Against Torture." The second box, which appears on page 5 of the I-589, conveys the same message even more clearly:

> **1. Why are you applying for asylum or withholding of removal under section 241(b)(3) of the INA, or for withholding of removal under the Convention Against Torture?** Check the appropriate box(es) below and then provide detailed answers to questions A and B below.
>
> I am seeking asylum or withholding of removal based on:
>
> ☐ Race ☐ Political opinion
> ☐ Religion ☒ Membership in a particular social group
> ☐ Nationality ☐ Torture Convention

This also leaves no room for doubt: Cordero-Chavez elected not to seek relief under the "Torture Convention." Finally, at the removal hearing, Cordero-Chavez's counsel confirmed her client's choice: she told the IJ that Cordero-Chavez sought only "asylum and withholding of removal," while saying nothing about CAT. *Cf. Desta v. Ashcroft*, 329 F.3d 1179, 1185 (10th Cir. 2003) (holding petitioner waived argument concerning designation of alternate country of deportation "by standing mute before the IJ when asked to name an alternative to Ethiopia").

Thus, unlike in *Eduard*, the IJ here lacked any reason to think Cordero-Chavez had the "specific intent to raise a claim for CAT relief." *Eduard*, 379 F.3d at 195. The opposite is true: Cordero-Chavez's I-589 twice expressly rejected CAT relief and her attorney confirmed in open court she sought only asylum and withholding of removal. *Eduard* did not involve a

situation where the applicant affirmatively chose not to seek CAT relief.[3] Rather, that case involved inferring the petitioners' intent from their answer to one question on the I-589. Here, we have far more information about Cordero-Chavez's intent, and it excludes any notion that she intended to seek CAT relief. *Cf. Torres-Tejada v. Ashcroft*, 81 F. App'x 69, 73–74 (7th Cir. 2003) (finding failure to present a social group theory where applicant "check[ed] only 'political opinion' and not 'social group' on his asylum application" and counsel failed to clarify the basis of application).

Accordingly, the BIA did not err in concluding Cordero-Chavez failed to raise a CAT claim.

\* \* \*

The Petition for Review is DENIED.

---

[3] The Government contends that, unlike the I-589 at issue here, the version of the form in *Eduard* (which was filed around 2000) did not include a checkbox for applicants to specifically elect CAT relief. That is correct. The I-589 did not contain the CAT-checkboxes until the form was revised in October 2001, after the *Eduard* petitioners filed their forms. *Compare* Thomas Alexander Aleinikoff et al., *Immigration and Nationality Laws of the United States: Selected Statutes, Regulations and Forms* 825, 828 (amended June 22, 2001), *with* Alexander Aleinikoff et al., *Immigration and Nationality Laws of the United States: Selected Statutes, Regulations and Forms* 939, 943 (amended May 15, 2002). This point is not critical to our decision that *Eduard* is not controlling, however. *Eduard* said nothing about CAT-checkboxes but relied only on the applicants' answer to the torture question on the I-589. *Eduard* therefore did not address the additional, unmistakable evidence of the applicant's intent present here.