# United States Court of Appeals for the Fifth Circuit

———————

**No. 22-60641**
Summary Calendar

———————

United States Court of Appeals
Fifth Circuit

**FILED**
November 30, 2023

Lyle W. Cayce
Clerk

Kaibin Zhou,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

————————————————————

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A209 488 217

————————————————————

Before Smith, Higginson, and Engelhardt, *Circuit Judges*.

Per Curiam:[*]

Kaibin Zhou, a native and citizen of China, had been lawfully admitted to the United States on December 18, 2015 on a student visa. Having never attended the school for which his visa was granted, Zhou filed an I-589 application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT) nearly a year later, based on claims that

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

he had suffered persecution due to his religion. Zhou now petitions for review of a decision of the Board of Immigration Appeals (BIA) dismissing his appeal and affirming the immigration judge's (IJ's) denial of his application for asylum, withholding of removal, and protection under CAT.

Proceeding *pro se*, Zhou argues that the BIA erred in affirming the IJ's adverse credibility determination, which was based on various inconsistencies between Zhou's testimony and the documentary evidence. "Credibility determinations are factual findings that are reviewed for substantial evidence." *Avelar-Oliva v. Barr*, 954 F.3d 757, 763 (5th Cir. 2020) (citation omitted). An adverse credibility determination is conclusive "unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Singh v. Sessions*, 880 F.3d 220, 225 (5th Cir. 2018) (internal quotation marks and citation omitted). The fact-finder "may rely on *any* inconsistency or omission in making an adverse credibility determination as long as the totality of the circumstances establishes that an asylum applicant is not credible." *Avelar-Oliva*, 954 F.3d at 764 (internal quotation marks and citation omitted).

In affirming the IJ's decision, the BIA relied on four inconsistencies between Zhou's testimony and the documentary evidence, many of which render Zhou incredible given that they relate to the heart of his alleged fear of religious persecution. First, Zhou alleges he was arrested in China on September 12, 2015 for attending an underground church. The BIA found that Zhou's testimony regarding the number of churchgoers arrested with him was inconsistent with his previous statement to the asylum officer. During his 2017 asylum interview, he stated there were five people at the house church when he was arrested; during his 2019 testimony, he explained there were eight people attending. Zhou's explanation—that he did not know why the asylum interview notes listed five churchgoers instead of eight—is unconvincing, given that Zhou was asked twice during the 2017 interview

about the number of church attendees, and he answered five both times. As such, the IJ did not err in rejecting Zhou's explanation, nor did the BIA err in relying on this inconsistency in affirming the IJ's adverse credibility determination. *See Morales v. Sessions*, 860 F.3d 812, 817 (5th Cir. 2017).

Second, Zhou's testimony regarding the number of times he reported to the village committee after his arrest in China was also inconsistent with the notes from his asylum interview. Zhou testified in 2019 that he reported to the village committee, as required after his arrest, on three occasions. When the IJ noted that Zhou told the asylum officer that he had only reported two times, Zhou claimed that he told the asylum officer that he had reported two rather than three times because he was "nervous." Though nervousness may be a plausible explanation for Zhou's inconsistent statement, the IJ was not required to accept it as sufficient. *See Morales*, 860 F.3d at 817; *see also Cordero-Chavez v. Garland*, 50 F.4th 492, 496 (5th Cir. 2022) (refusing to disturb IJ's adverse credibility determination despite petitioner's argument that inconsistencies relied on by the IJ were the result of "a combination of confusion, nervousness, and miscommunication while interviewing with an asylum officer").

Third, the IJ and the BIA also properly relied on Zhou's inconsistent statements regarding his church attendance in the United States. Zhou stated in his asylum interview that he began attending church soon after arriving in the United States. At his removal hearing, however, Zhou testified that he did not attend church during his first two years in the United States. Further, Zhou admitted that he did not begin attending church until after his asylum interview in 2017. When asked why he waited two years to begin attending church when he fled China on account of religious freedom, Zhou sought to explain that he did actually attend prior to 2017, but did not count that attendance because he sat alone and did not interact with other members.

Though the IJ acknowledged Zhou's explanation, he rejected it as insufficient. This was not erroneous, as neither the IJ nor the BIA was required to accept the explanation. *See Morales*, 860 F.3d at 817. Zhou was vague regarding his church attendance, and could not recall how many times he had attended prior to 2017. "[T]his is not a situation where [the petitioner] failed to remember non-material, trivial details that [are] only incidentally related to [his] claim of persecution." *Id.* (internal quotation marks and citation omitted). Zhou claimed that he fled China so that he could freely practice his religion. As such, the IJ and the BIA reasonably relied on Zhou's inconsistent statements regarding when he began practicing his religion in the United States in finding that he was not credible. *See Omagah*, 288 F.3d at 258.

Fourth, the IJ also found that Zhou's testimony regarding his student visa application was inconsistent with the documentary evidence. Zhou testified that his mother became concerned for his safety after he first reported to the village committee on September 30, 2015, and arranged for a smuggler or "snakehead" to assist Zhou in his departure from China. As the IJ noted, however, a representative from Troy University signed Zhou's I-20 application on September 10, 2015, which was before Zhou's alleged arrest in China and was also before he first reported to the village committee. The IJ did not accept Zhou's explanation that he was unfamiliar with the contents of the I-20 application because he was not involved in its preparation, especially where Zhou agreed that the I-20 application would have had to have been prepared in advance of the school official signing it. Given Zhou's unpersuasive explanation, it was not unreasonable for the IJ and the BIA to question the timing of Zhou's I-20 application in evaluating his credibility. *See Omagah*, 288 F.3d at 258.

Faced with these inconsistencies, it was not unreasonable for the IJ and the BIA to conclude that Zhou's corroborating evidence did not

sufficiently rehabilitate his testimony or independently satisfy his burden of proof for relief. "Regardless of whether an alien's testimony is otherwise credible, the IJ may require the submission of reasonably available evidence corroborating a claim for relief from removal." *Avelar-Oliva*, 954 F.3d at 764.

There were a number of other inconsistencies that the IJ found cast doubt on the paperwork Zhou submitted as corroborating evidence. For instance, the actual receipt for the payment that was made to secure Zhou's release from detention clearly listed Zhou's name, which contradicted his testimony that his name was not on the receipt because his parents paid the bond. The IJ found Zhou's explanation—that he did not look closely at the receipt—unpersuasive. Further, Zhou claimed that he did not receive a letter from the village committee, despite apparently submitting a letter as evidence. When asked about it, Zhou claimed that his mother had mailed all of the supporting documents from China, and that he had only seen the receipt for the bond payment, but not other documents (such as the letter from the village committee). This, too, supports the IJ's decision to afford the document little weight. And as for the letter submitted from Zhou's mother, the IJ noted that her statement was unsworn. Given Zhou's testimony that his mother had hired a smuggler to prepare fraudulent immigration documents on Zhou's behalf, moreover, the IJ found that it should be given "little to no weight." Though Zhou points out that the details relayed in this letter are consistent with his claims of religious persecution, the IJ's determination was not unreasonable given the mother's history of deceit relating to Zhou's pursuit of a visa.

Finally, the IJ found that the testimony from Zhou's pastor, George McLean, though credible, failed to establish Zhou's claims. McLean testified that Zhou had been attending church services at Hosanna Church in Marrero, Louisiana, for two years. McLean admitted, however, that he and Zhou did not communicate beyond mere pleasantries because Zhou spoke

only limited English. McLean also could not say what Zhou was able to comprehend during the church services given his limited English proficiency. Based on McLean's inability to meaningfully communicate with Zhou, the IJ reasonably found that Zhou's religious beliefs could not be definitively established by McLean's testimony. *See Omagah*, 288 F.3d at 258.

Zhou has failed to demonstrate that, under the totality of these circumstances, no reasonable factfinder could make an adverse credibility ruling in his case. *See Singh*, 880 F.3d at 225. Substantial evidence therefore supports the BIA's affirmance of the IJ's adverse credibility determination. *See id.* at 224. Without credible evidence, the BIA had no basis to grant Zhou's request for asylum or withholding of removal. *See Chun v. INS*, 40 F.3d 76, 79 (5th Cir. 1994). Because the BIA found the issue of credibility dispositive, it did not consider Zhou's remaining arguments related to the merits of his asylum application. *See Chun*, 40 F.3d at 79. Thus, to the extent that Zhou raises arguments related to the merits of his claims for asylum and withholding of removal, we do not address them. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

The BIA also relied on the IJ's adverse credibility determination in denying Zhou's CAT claim. The BIA did so, however, without considering Zhou's evidence of country conditions in China. We have cautioned against "overreliance on an adverse credibility ruling" in the CAT context. *Efe v. Ashcroft,* 293 F.3d 899, 907 (5th Cir. 2002); *see Arulnanthy v. Garland*, 17 F.4th 586, 598 (5th Cir. 2021) (quoting *Efe*).

Zhou, however, does not raise *Arulnanthy* or otherwise argue that the BIA erred in relying on the IJ's adverse credibility finding in denying CAT relief without considering his evidence of country conditions. Though *pro se* briefs are afforded liberal construction, even *pro se* parties must reasonably

comply with briefing requirements to preserve an issue on review. *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993); *see also Soadjede v. Ashcroft*, 324 F.3d 830, 833 (5th Cir. 2003). As such, Zhou has abandoned any argument under *Arulnanthy* by his failure to brief it.

Accordingly, the petition for review is DENIED.