# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 20, 2023

Lyle W. Cayce
Clerk

_____

No. 21-60213

_____

Paulinus Doh Ndungmbowo,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

_____

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A203 600 685

_____

Before Elrod, Haynes,[†] and Willett, *Circuit Judges*.

Per Curiam:[*]

Paulinus Ndungmbowo petitions for review of an order of the Board of Immigration Appeals affirming the denial of his claims for asylum, withholding of removal, and protection under the Convention Against Torture. He challenges the BIA's determinations that he lacked credibility and that he failed to provide sufficient independent corroboration in support

_____

[†] Judge Haynes concurs only in the judgment.

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

of his claims. We agree that the adverse credibility determination is unsupported by the record. We likewise conclude that Ndungmbowo has presented independent corroborating evidence in support of his claims. We GRANT the petition for review and REMAND for further consideration of Ndungmbowo's asylum, withholding of removal, and CAT claims.

I

Paulinus Ndungmbowo is a native and citizen of Cameroon. After conceding removability, Ndungmbowo sought relief in the form of asylum, withholding of removal, and protection under CAT. He alleged that he had been the subject of unlawful imprisonment and torture in Cameroon because of an imputed political opinion and his identity as an Anglophone.

Ndungmbowo appeared in front of the Immigration Judge on June 11, 2020, to testify in support of his I-589 application. Ndungmbowo testified that he had been repeatedly detained, arrested, and severely abused by the Cameroonian military for associating with and aiding the separatist movement protesting the Cameroonian government's treatment of certain minority groups.

Ndungmbowo testified that he was arrested twice by the Cameroonian military. The first arrest, occurring in March 2017 at his auto body shop, resulted in a beating so severe that it left him with a broken hand and leg. Ndungmbowo was later found unconscious on the side of the road and it took six months for his leg to heal. He was permanently disfigured—his left leg is shorter than his right leg and has less mobility.

He learned after this arrest that the military was still looking for him and had killed one of his customers, thinking it was him. Frightened for his safety, Ndungmbowo moved to a different city: Yaoundé, the capital of Cameroon. In October 2018, he was again arrested and detained in the National Gendarmarie. He testified to being kept in inhumane conditions

without access to a toilet or medical care, fed only every other day, and routinely beaten. He spent the first month in isolation. Later, two other inmates were added to his cell. These inmates eventually died while sharing the same cell and were not removed. He testified that a guard attempted to rape him and he suffered a broken tooth when he fought back. During this detention, he was never brought before a judge. He finally escaped in December 2018, at which point a warrant was issued for his arrest. On his way to his family's home, Ndungmbowo learned that the military had burned it down, forcing the rest of his family to go into hiding. It was at this point that he fled Cameroon for Nigeria, and eventually traveled to the United States for asylum.

Finding Ndungmbowo not credible, the IJ denied his applications for asylum, withholding of removal, and protection under CAT. The IJ also denied Ndungmbowo's asylum and withholding of removal applications on the basis that he had not established past persecution or a well-founded fear of future persecution. Last, the IJ denied CAT relief on the basis of adverse credibility. The BIA affirmed. Ndungmbowo timely appealed.

## II

We review the BIA's factual findings for substantial evidence and its legal conclusions de novo. *Cordero-Chavez v. Garland*, 50 F.4th 492, 495 (5th Cir. 2022) (citing *Soriano v. Gonzales*, 484 F.3d 318, 320 (5th Cir. 2007)). We also have the "authority to review those portions of the IJ's decision that impacted the BIA." *Nkenglefac v. Garland*, 34 F.4th 422, 427 (5th Cir. 2022).

## III

Ndungmbowo contends that the BIA erred in denying him relief because (1) the adverse credibility finding was not supported by substantial evidence, and (2) he presented sufficient corroborating evidence in support of his claims for relief.

No. 21-60213

A

We begin by considering whether the discrepancies on which the BIA upheld the adverse credibility finding are substantially supported by the record.

The IJ makes a credibility determination by taking into "[c]onsider[ation] the totality of the circumstances, and all relevant factors . . . without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii); *see also Wang v. Holder*, 569 F.3d 531, 537 (5th Cir. 2009). An applicant fails to carry his burden for relief if he is found not credible. 8 U.S.C. §§ 1158(b)(1)(B)(ii), 1229a(c)(4), 1231(b)(3)(C).

"[A]n IJ may rely on any inconsistency or omission in making an adverse credibility determination as long as the 'totality of the circumstances' establishes that an asylum applicant is not credible." *Singh v. Sessions*, 880 F.3d 220, 225 (5th Cir. 2018) (quoting *Wang*, 569 F.3d at 538). Any adverse credibility determination "must be supported by specific and cogent reasons derived from the record." *Id.* (quoting *Wang*, 569 F.3d at 537). We will defer to an adverse credibility determination "unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Id.* (quoting *Wang*, 569 F.3d at 538). Adverse credibility determinations that are "unsupported by the record and are based on pure speculation or conjecture will not be upheld." *Wang*, 569 F.3d at 537 (*citing Mwembie v. Gonzales*, 443 F.3d 405, 410 (5th Cir. 2006)).

No. 21-60213

The BIA relied on four inconsistencies in affirming the IJ's adverse credibility determination.[1]  While we are always reluctant to question a factual determination on a petition for review, we are compelled to conclude that the adverse credibility determination is not substantially supported by the record.  Two purported "inconsistencies" are not real inconsistencies, and the remaining two, while arguable, are not by themselves enough to support an adverse credibility determination looking at the totality of the circumstances.

First, the IJ found that a photograph purporting to depict an unconscious man was inconsistent with Ndungmbowo's testimony that he had not been harmed during his second arrest.[2]  The photograph depicts a man, laying on the ground, with his eyes closed.

Ndungmbowo testified that the photo depicted him after he had been tackled to the ground, and that he was not unconscious.  The IJ determined that the man in the photograph was unconscious, so Ndungmbowo's testimony was inconsistent with this evidence.  But there is no evidence in the record to support the IJ's determination that the man depicted in the

---

[1] The IJ also relied on a fifth purported inconsistency in Ndungmbowo's story: the length of time between Ndungmbowo's leaving Cameroon and arriving in Nigeria. Specifically, Ndungmbowo initially testified that he left Cameroon on December 27, 2018, but later stated that he arrived in Nigeria on March 20, 2019.  The BIA expressly declined to rely on this purported inconsistency in affirming the IJ's determination, and "on appeal, we review only the decision of the BIA, unless the IJ's decision impacted the decision of the BIA." *Nkenglefac*, 34 F.4th at 427.  Thus, we do not consider this fifth purported inconsistency.

[2] Ndungmbowo argues for the first time that his attorney mislabeled this photograph as depicting him, when it was in fact his brother.  Because this argument was not brought before or considered by the BIA in its final order, we decline to address it here. 8 U.S.C. § 1252(d)(1) (requiring exhaustion); *see also INS v. Orlando Ventura*, 537 U.S. 12, 17 (2002) (holding that proper remedy is to remand to agency for additional investigation of matter not previously considered).

photograph is unconscious. This speculation, "unsupported by the record," about the condition of the man in the picture cannot be used to uphold an adverse credibility determination. *Wang*, 569 F.3d at 537.

Second, Ndungmbowo testified at his removal proceeding that he had suffered an attempted rape during his second arrest. The IJ found this "significant omission" from his Border Statement, his Credible Fear Interview, and his Asylum Application was not reasonable "given the grievous nature of the conduct alleged."[3]

Although Ndungmbowo first described the attempted rape during his removal proceeding, it is not the first time he alleged he had suffered severe harm. In his Declaration, he wrote he had been beaten and "severely tortured." His testimony regarding the attempted rape is easily encompassed within his previous statement that he was "severely tortured." His failure to mention the attempted rape specifically does not support an inconsistency because Ndungmbowo was not required to detail with specificity every act of torture he endured over his month-and-a-half imprisonment. Therefore, this was not an inconsistency and should not have been used to contribute to the adverse credibility finding.

Third, the IJ found that evidence undercut Ndungmbowo's claim that he was detained from October 24 through mid-December 2018. In support of his application, Ndungmbowo submitted an employee affidavit indicating

---

[3] The BIA accepted Ndungmbowo's assertion that the omission of these facts from his Credible Fear Interview and his Border Statement did not support an adverse credibility finding. For this reason, we do not consider his Credible Fear Interview or the Border Statement in our analysis.

that the employee had learned Ndungmbowo escaped from custody in "late October."[4]

Ndungmbowo argues that the IJ improperly relied on this affidavit, which bore an incorrect date, and disregarded a substantial amount of evidence, including other affidavits and an arrest warrant, which corroborated his timeline. The IJ gave little weight to the other affidavits because the identification cards were illegible and because the affidavit of Ndungmbowo's wife did not give specific dates, but the IJ did not explain why he was willing to give credence to the employee's affidavit, despite the same deficiencies.

Also before the IJ was a warrant for Ndungmbowo's arrest, issued on December 20, 2018, charging him with "escap[ing] from detention at gendarmerie nationale" and "participat[ing]/organiz[ing] an illegal meeting(s)." The IJ did not address the warrant in his finding that Ndungmbowo's testimony was not corroborated by the evidence. Taking into consideration the totality of the record, including the arrest warrant, we find that substantial evidence exists to corroborate Ndungmbowo's testimony that he was in custody from October through December 2018.

This leaves only the fourth inconsistency on which the BIA relied—discrepancies in the birthdates of Ndungmbowo's wife and father. Although the BIA may rely on such "tangential" discrepancies, ultimately, an adverse credibility determination must rest on the "totality of the circumstances." *See Wang*, 569 F.3d at 538–39. Such minor discrepancies in the identity documents—tangential to Ndungmbowo's claim and quite possibly the

---

[4] Ndungmbowo submitted a "corrected" affidavit to the BIA with a motion to remand to the IJ for reconsideration. He asserts that the BIA abused its discretion when it declined to remand. Because we remand for other reasons, we do not address this argument.

result of typographical errors—cannot bear the weight of the IJ's adverse credibility determination.

Although it is a rare case in which we reverse an adverse credibility determination, we have done so when the alleged discrepancies are not actual discrepancies. *See Nkenglefac*, 34 F.4th at 430 (reversing adverse credibility determination when not supported on a review of the record); *Ndudzi v. Garland*, No. 20-60782, 2022 WL 9185369, at *5 (5th Cir. July 22, 2022) (unpublished) (same). We do the same here.

B

We next address the BIA's denial of relief on the ground that Ndungmbowo failed to present sufficient independent corroborating evidence for each of his claims. Although claims for asylum, withholding of removal, and protection under CAT impose different evidentiary burdens, *see* 8 U.S.C. §§ 1158(b)(1)(B)(ii), 1229a(c)(4), 1231(b)(3)(C), we find that Ndungmbowo has met his burden of producing independent corroborating evidence.

1

First, we address the IJ's denials of Ndungmbowo's claims for asylum and withholding of removal. The IJ denied relief based on the adverse credibility finding. The IJ alternatively held that even if Ndungmbowo had been found credible, he had not established past persecution or a well-founded fear of future persecution. The BIA did not decide whether the IJ erred on this alternative ground.

When the BIA has not spoken on a matter that "statute places primarily in agency hands," this court remands to give the BIA opportunity to address the matter in the first instance. *Negusie v. Holder*, 555 U.S. 511, 517 (2009) (citing *INS v. Orlando Ventura*, 537 U.S. 12, 16–17 (2002)).

Therefore, we remand Ndungmbowo's asylum and withholding of removal claims to the BIA for reconsideration consistent with our holding.

2

Last, we address Ndungmbowo's CAT claim, which is "distinct from asylum and withholding of removal claims and should receive separate analytical attention." *Santos-Alvarado v. Barr*, 867 F.3d 428, 436 (5th Cir. 2020) (citation and quotation marks omitted).

Under CAT, an applicant is eligible for relief if he can "establish that it is more likely than not that he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). The regulation "*requires* the BIA to consider 'evidence of gross, flagrant or mass violations of human rights within the country of removal' and any '[o]ther relevant information regarding conditions in the country of removal' in its likelihood -of-torture assessment." *Arulnathy v. Garland*, 17 F.4th 586, 598 (5th Cir. 2021) (quoting 8 C.F.R. § 1208.16(c)(3)). When an applicant offers "non-testimonial evidence that could independently establish his entitlement to CAT relief," an adverse credibility finding alone cannot defeat an applicant's eligibility for relief. *Id*; *see also Mboba v. Garland*, No. 21-60416, 2023 WL 4836671, at *7 (5th Cir. July 27, 2023) (unpublished) (remanding CAT claim denied exclusively on adverse credibility determination).

We review the BIA's decision "procedurally" to "ensure that the [applicant] has received full and fair consideration of all circumstances that give rise to his or her claims." *Abdel-Masieh v. INS*, 73 F.3d 579, 585 (5th Cir. 1996) (quotation marks and citation omitted).

The IJ denied CAT relief "primarily" on the basis of adverse credibility. The BIA affirmed denial of CAT relief based on the adverse credibility finding and insufficient corroborating evidence. But even discounting the affidavits, as the IJ did, Ndungmbowo offered substantial

non-testimonial evidence in support of his application, including: an arrest warrant issued after he escaped from custody in December 2018; a physical demonstration of the permanent disfigurement caused by the injuries suffered during his detention; photographs of citizens being persecuted by the government; a 2018 U.S. Department of State Human Rights Report on Cameroon; a 2017/2018 Amnesty International report on Cameroon; a 2019 Freedom in the World Cameroon conditions report; and several news articles on the increasing violence being inflicted by the government on suspected secessionists. Neither the BIA nor the IJ addressed this independent corroborating evidence in their determinations.

We conclude that the BIA's failure to consider the independent corroborating evidence "raises too great a concern" that it did not adequately consider the evidence before it. *Emmanuel-Tata v. Garland*, No. 20-60487, 2022 WL 126982, at *2 (5th Cir. Jan. 12, 2022) (unpublished); *see also Sharma v. Holder*, 729 F.3d 407, 412–13 (5th Cir. 2013) (remanding where agency did not consider substantial evidence); *Melendez-Monge v. Garland*, No. 20-60814, 2022 WL 1532641, at *2 (5th Cir. May 16, 2022) (unpublished) ("While the BIA is not required to address every piece of evidence, it is required to consider key evidence." (quotation marks and citation omitted)); *Mboba*, 2023 WL 4836671, at *7 (remanding CAT claim for reconsideration of independent corroborating evidence).

This case differs from cases where no independent corroborating evidence has been offered. *See Mohndamenang v. Garland*, 59 F.4th 211, 213 (5th Cir. 2023) (upholding denial because of lack of any independent corroborating evidence); *Domingo-Torrez v. Garland*, No. 20-61173, 2022 WL 2867164, at *1 (5th Cir. July 21, 2022) (unpublished) (holding adverse credibility determination dispositive of CAT claim only because no independent, non-testimonial evidence offered).

No. 21-60213

Because neither the IJ nor the BIA addressed the relevant country conditions reports, Ndungmbowo did not receive meaningful consideration of the relevant substantial evidence supporting his claims. *Abdel-Masieh*, 73 F.3d at 585; *see also Noumbissi v. Garland*, No. 21-60012, 2022 WL 1744787, at *2 (5th Cir. May 31, 2022) (unpublished) ("There is no indication in the record that the BIA took [country conditions] evidence into account in deciding [applicant's] CAT claim, and the failure to do so was error."). Therefore, we grant Ndungmbowo's petition for review with regard to his CAT claim and remand for reconsideration of the independent corroborating evidence.

\*       \*       \*

We GRANT the petition for review and REMAND for reconsideration of Ndungmbowo's asylum, withholding of removal, and CAT claims consistent with this opinion.